744 So.2d 839 (1999)
Jimmy Lynn LONG and Louis Chambless, d/b/a Long & Chambless Plumbing And Heating Company, Appellants,
v.
Oliver N. HARRIS and Scottye H. Harris, Appellees.
No. 98-CA-00290-COA.
Court of Appeals of Mississippi.
May 18, 1999.
*840 Paul L. Goodman, Greenwood, Attorney for Appellants.
Pat M. Barrett, Jr., Stephen Smith Ashley, Jr., Lexington, Attorneys for Appellees.
BEFORE THOMAS, P.J., LEE, AND SOUTHWICK, JJ.
THOMAS, P.J., for the Court:
¶ 1. Long & Chambless Plumbing and Heating Company, Inc., defendant, appeals the trial court's grant of Oliver and Scottye Harris's, plaintiffs, motion for judgment notwithstanding the verdict in the Circuit Court of Leflore County. Aggrieved, Long appeals to this Court on the following assignment of error:

I. WHETHER THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT.
Finding error, we reverse and remand for a new trial.

FACTS
¶ 2. On March 5, 1997, Oliver and Scottye Harris filed suit in the Circuit Court of Leflore County against Long and Chambless Plumbing and Heating Company alleging negligent plumbing work by Long and his employees. Harris contends that a large ornamental oak tree died as a result of the plumbing work performed by Long, thereby resulting in additional expenses incurred by Harris for removing the dead tree, landscaping that damaged area, and for the loss of the actual value of the tree.
¶ 3. In the spring of 1993, Long was contacted by Scottye Harris regarding a plumbing problem. Harris advised Long that she was having trouble with her toilets backing up and asked Long if he could assess the situation. Long agreed. After an initial cleaning by Long, the Harrises continued to experience problems with their toilets and requested that Long return to assess the continuing problem. Long personally returned to inspect to problem and determined that the sewer line running from the Harrises' house to the main sewer line was in need of replacement. Harris agreed to the replacement of the line.
¶ 4. During the sewer line's replacement, a "root problem" was encountered due to a large oak tree near the sewer line. Long's workmen could not correct the problem with the tools with them; therefore, Long was notified. Long personally went to the work site with a chainsaw and began to cut through the roots inhibiting their progress. The roots were cut and the replacement work proceeded as planned. Permission to cut the roots was not sought or obtained *841 by Long prior to cutting the roots nor was advisement of any alternatives made available to Harris by Long concerning the root problem.
¶ 5. Sometime later the oak tree died, necessitating its removal. Damages in the amount of $25,000 were sought by Harris for the tree's removal, re-landscaping the area, and the value of the tree itself. Two fields of expert testimony were offered at trial. Harris offered expert testimony by Leonard Ware, a professional plumber, on the disputed issue of accepted plumbing practices. Ware opined that reasonable plumbing practices required the cutting of tree roots only as a last resort and only after the owner had been notified of the possible damage that could be done to the tree as a result. Ware opined that Long did not follow reasonable plumbing practices in the replacement of the Harrises' sewer line. Harris also offered additional expert testimony through Stephen Dickey, an expert in the field of urban forestry and tree surgery. In short, Dickey opined that the death of the tree was attributable Long's cutting of the tree's roots in 1993.
¶ 6. Long, likewise, offered expert testimony by Allen Barry, the superintendent of the street department for the City of Greenwood, as to what a reasonable plumber acting under similar circumstances would have done to complete the assigned work once tree roots are encountered. Barry opined that the cutting of tree roots was common practice in the repair and replacement of sewer lines and that he considered it acceptable plumbing practice under the circumstances faced by Long. Long's witnesses also dispute the value of damages.
¶ 7. After conclusion of the proof and the arguments of counsel, the jury returned a verdict of ten to two in favor of the defendant, Long. Final judgment was thereupon entered, and Harris thereafter filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. The trial court granted plaintiff's motion for judgment notwithstanding the verdict and set damages in the amount of $8,045.50. The trial court also conditionally granted the motion for a new trial.

ANALYSIS

I.

WHETHER THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT.
¶ 8. We are asked to revisit the well established standard of review on motions for a judgment notwithstanding the verdict. This Court evaluates a J.N.O.V. motion under the same standard as is applied to a motion for directed verdict. Henson v. Roberts, 679 So.2d 1041, 1045 (Miss.1996); James v. Mabus, 574 So.2d 596, 600 (Miss.1990); Turner v. Turner, 524 So.2d 942, 944 (Miss.1988); Upton v. Magnolia Elec. Power Ass'n, 511 So.2d 939, 943 (Miss.1987). This Court conducts a de novo review of motions for directed verdict and likewise on matters involving the grant or denial of a J.N.O.V. Northern Elec. Co. v. Phillips, 660 So.2d 1278, 1281 (Miss.1995).
¶ 9. After submission of all the evidence to the jury, a verdict of ten to two was returned in favor of the defendant, Long. The crux of the matter before us today is whether after all the evidence presented has been viewed in a light most favorable to the non-moving party, in this case Long, and after giving that party the benefit of all favorable inferences that may be drawn therefrom, the trial court erred in granting Harris's motion of judgment notwithstanding the verdict and awarding damages in the amount of $8,045.50. Only when the evidence and inferences so considered fails to support the non-moving party's position and points so overwhelmingly in favor of the movant's position, should the motion for judgment notwithstanding the verdict be granted and the jury's verdict set aside. See Junior Food *842 Stores, Inc. v. Rice, 671 So.2d 67, 76 (Miss. 1996); Misso v. Oliver, 666 So.2d 1366, 1375 (Miss.1996); C & C Trucking Co. v. Smith, 612 So.2d 1092, 1098 (Miss.1992); Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1177 (Miss.1990).
¶ 10. In the instant case, the jury was faced with conflicting opinions as to whether Long followed acceptable professional practices in completing his contracted work to replace Harris's sewer lines after the work crew encountered large roots from a nearby tree which was obstructing the completion of their work. In short, the jury was faced with battling experts offering conflicting opinions as to Long's required standard of care and whether Long in fact breached that standard. From the verdict reached, ten to two in favor of Long, it is apparent that the jury lent more credibility and weight to the opinions offered by Long's expert witness and other testimony rather than the expert opinions and other testimony offered by Harris.
¶ 11. Our role in sound institutional jurisprudence requires that we give substantial deference to a jury's findings of fact and to the trial judge's determination that a jury issue was present and tendered. General Motors Corp. v. Pegues, 724 So.2d 489, 493 (Miss.App.1998) (citing City of Jackson v. Locklar, 431 So.2d 475, 478-79 (Miss.1983)). We have before us the same record as was before the trial judge in evaluating whether to grant or deny the movant's J.N.O.V. We do not, however, have the benefit, as does the trial judge, of being present and able to observe the manner and demeanor of the witnesses as they give testimony. Although we review the grant of J.N.O.V. de novo, we accord great respect to a trial judge's grant or denial of J.N.O.V. when we are determining whether error is to be found. Id.
¶ 12. In the instant case, the trial judge conditionally granted Harris's alternative motion for a new trial when he likewise granted the J.N.O.V. A motion for a new trial falls within a lower standard of review on appeal than that of J.N.O.V. The motion for a new trial challenges the weight of the evidence. Henson, 679 So.2d at 1045; James, 574 So.2d at 600. "[T]he rule in this state is that an action of the trial court upon a motion for a new trial is to be favorably considered upon appeal and supported unless manifest error appears or unless its action in sustaining the motion manifests an abuse of discretion." Mississippi State Highway Commission v. Hancock., 309 So.2d 867, 871 (Miss.1975). We will reverse a trial judge's ruling on a motion for a new trial only where such a ruling amounts to an abuse of discretion. Shields v. Easterling, 676 So.2d 293, 298 (Miss.1996).
¶ 13. Having said this, we find error in the trial court's grant of the J.N.O.V. and the award of damages against Long. The issue of both liability and damages were disputed matters only a jury could decide. However, in view of the trial court's conditional grant of Harris's motion for a new trial, which we do not find to be an abuse of discretion, we reverse and remand for a new trial on all issues.
¶ 14. THE JUDGMENT OF THE LEFLORE COUNTY CIRCUIT COURT IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS ARE ASSESSED TO THE APPELLEES.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, AND PAYNE, JJ., CONCUR.