LEE, J.,
for the Court:
¶ 1. Jimmy Phillips brought a negligence action against his employer, the Illinois Central Railroad Company, under the Federal Employees Liability Act. See 45 U.S.C. ¶¶ 51-60 (FELA). He asserted that he sustained physical injuries and loss of income arising from a sudden stop of a train in which he was working. A jury returned a verdict of $500,000. The circuit court granted a remittitur reducing the award to $85,485.04.
¶ 2. Phillips appeals to this Court asserting the remittitur was erroneous and the jury verdict should be reinstated. Illinois Central cross-appeals asserting: 1) the circuit court should have granted summary judgment, 2) the circuit court should have granted a directed verdict or in the alternative a judgment notwithstanding the verdict, 3) the circuit court should have granted its motion for a new trial because improper evidentiary rulings and/or erroneous jury instructions resulted in the jury returning a verdict that was against the overwhelming weight of the evidence, and 4) even if no single issue alone was error, the issues in combination require a new trial be granted in the interest of justice. In the alternative to its assertions of error Illinois Central also contends that the re-mittitur was correctly granted based upon the evidence. Nearly all of these assignments of error regard one of three larger issues: whether Phillips proved negligence; whether Phillips proved any injury; and whether the remittitur was proper.
¶ 3. We find that Phillips established a causal nexus between his shoulder injuries and the train stopping. While this nexus was indeed thin, it did support the verdict in his favor. Moreover, although we find that while the circuit court improperly allowed expert economist testimony into evidence, the remittitur reduced the jury award by the amount that the circuit court attributed to this expert testimony. Accordingly, we affirm.
FACTS
¶ 4. Phillips was a conductor with twenty-two years experience working for Illinois Central. On December 1, 1994, the train in which he was riding stopped, and according to his testimony, he was thrown from his feet by a “super violent” and out of the ordinary “slack action” as the train’s momentum was arrested by ' its brakes which were operated by the train’s engineer, Larry Johns. He reported the accident and saw Illinois Central’s physician, who was also his personal physician, Dr. William G. Munn, complaining of pain in his shoulders and knees. Dr. Munn noted “old sclerosis” in Phillips’ right shoulder, but no dislocation or break was revealed by x-rays, so Dr. Munn released him to return to work. Further, Dr. Munn noted he was already treating Phillips for arthri *235 tis in his knees. Dr. Munn prescribed Relafen for “a day or two” and released Phillips back to work with the advice he “actively” use his shoulder, elbow and wrist.
¶ 5. In March of 1997, after a medical examination requested by Illinois Central, Phillips was involuntarily retired because of the condition of his knees. During the month before Phillips was retired, Dr. Munn wrote a letter concurring that Phillips was medically disabled from performing his professional duties, stating that for the past two years Phillips had suffered “pain, swelling, clicking, popping, locking and giving way” in his right knee joint, which would require joint replacement. Dr. Munn also stated Phillips had arthritis in his left knee and right shoulder, and Dr. Munn noted “possible rotator cuff injury of the right shoulder.”
¶ 6. After retirement, Phillips continued to have pain in his knees and shoulder. On November 12, 1997, he initiated the present action. On May 7,1998, he sought treatment from Dr. Daniel Dare, an orthopedic surgeon. Dr. Dare diagnosed the continuing degeneration in Phillips’ knees. He also reviewed a previous examination from Southern Diagnostic Imaging that revealed a partially torn rotator cuff muscle. Dr. Dare performed arthroscopic surgery during which the rotator cuff was repaired, as was a previously undiscovered tear to his biceps tendon and cartilage tears to his labrum.
DISCUSSION
I. WHETHER PHILLIPS PROVED NEGLIGENCE
¶ 7. Illinois Central contends that Phillips failed to prove any negligence.[1] Appellate review of a denial of a motion for a directed verdict or motion for a judgment notwithstanding the verdict is limited to an abuse of discretion standard, and a trial court’s ruling will not be disturbed if the evidence could support a finding for the non-moving party. Long v. Harris, 744 So.2d 839, 842(¶ 11) (Miss.Ct.App.2000); see also, Turnbough v. Steere Broadcasting Corp., 681 So.2d 1325, 1326-27 (Miss.1996); Tate v. Southern Jitney Jungle, 650 So.2d 1347, 1349-50 (Miss.1995). Illinois Central asserts that but for the circuit court’s errors in allowing Phillips to offer his lay opinion as to the train being improperly stopped and/or in submitting the case to the jury upon the doctrine of res ipsa loquitur, the jury would not have had a basis for finding that Phillips’ fall was attributable to any negligence on its part.
a. LAY OPINION TESTIMONY
¶ 8. Illinois Central contends the circuit court erred in admitting the lay opinion testimony of Phillips, wherein he testified that the train was stopped in a negligent manner. For lay witness opinion testimony of an ultimate fact to be admissible, it must pass a two part test under M.R.E. 701 and M.R.E. 602. The matter testified to must be within the witnesses personal knowledge, and the testimony must be helpful to the trier of fact in resolving the issue. Bower v. Bower, 758 So.2d 405, 413(¶ 37) (Miss.2000); Jones v. State, 678 So.2d 707, 710 (Miss.1996). Further, trial courts have discretion in determinations of the admissibility of evidence. Bower, 758 So.2d at 413(¶ 35). *236 Phillips had been a brakeman and conductor for twenty-two years, and he had actual knowledge of how trains normally stopped so as to not injure people riding in the train. Further, the testimony was helpful in assisting the jury understand the issue of negligence. We cannot say that the circuit court abused its discretion in admitting Phillips’ lay opinion testimony.
b. RES IPSA LOQUITUR
¶ 9. Additionally, Illinois Central contends that the circuit court erred in granting a res ipsa loquitur jury instruction. The doctrine of res ipsa. loquitur applies where an event occurs that does not usually occur without negligence, the instrument of the event was in the defendant’s sole control, and the plaintiff did not contribute towards the negligence. Coleman v. Rice, 706 So.2d 696, 698(¶ 10) (Miss.1997). In this case, Illinois Central contended it was “unfair” to allow the jury to receive a res ipsa loquitur instruction because the “facts of the case [regarding negligence] were fully developed.” This assertion inaccurately characterizes the case. Phillips testified that the train stopped improperly. Illinois Central’s records from that date did not reflect any mechanical failures. Phillips testified that, assuming the train’s mechanical equipment was not faulty, the only explanation he could offer was that Johns must have negligently misapplied the brakes. He knew of no other rational explanation leading to why the train stopped in the manner he described, but why, or exactly how Johns misapplied the brakes was something he could not know. As such, Illinois Central misstates the facts as being “fully developed.”
¶ 10. Moreover, the Fifth Circuit Court of Appeals stated in a FELA case, “[i]t is the settled law of this Circuit that res ipsa loquitur is proper even though the plaintiff attempts to prove exactly what happened.” Dugas v. Kansas City Southern Ry. Lines, 473 F.2d 821, 825 (5th Cir.1973)(citing Kansas City Southern Ry. Co. v. Justis, 232 F.2d 267 (5th Cir.1956)); Texas & Pacific Ry. Co. v. Buckles, 232 F.2d 257 (5th Cir.1956). In Dugas, the plaintiff testified that as a co-worker pried off the door to a railcar the door fell on him, and this accident was a result of negligence, even though his co-worker and other witnesses for the defendant testified that no negligence occurred and that the railcar and door were not defective. Dugas, 473 F.2d at 823. There was no more “unfairness” to Illinois Central in the present case than there was to the defendant in Dugas. In that case, the plaintiff put forth his theories that either the co-worker had negligently pried the door or other unidentified workers failed to note defective welds. Id. Similarly, in this case, Phillips’ theory was that Johns negligently applied the brakes, but whatever specific circumstances caused him to act were not within his knowledge. Johns, in turn, testified and denied that he had been negligent. Thus, res ipsa loquitur applied in this case.
If 11. In sum, Phillips submitted credible evidence tending to show Illinois Central through its employee Johns, or some other factor attributable to it through the doctrine of res ipsa loquitur, caused Phillips to fall.
II. WHETHER PHILLIPS PROVED ANY INJURY
¶ 12. Illinois Central contends that no credible evidence supported a finding of any damages arising from Phillips falling on the train, and the circuit court erred in not granting its motion for a directed verdict or judgment notwithstanding the verdict. Again, our scope of re *237 view is limited to an abuse of discretion standard in matters going to sufficiency of the evidence. Long, 744 So.2d at 842(¶ 11). Illinois Central contends that no medical testimony or any other evidence tends to link Phillips’ involuntary retirement to the injuries he sustained when the train stopped. This is correct. As discussed more fully in the following section of this opinion dealing with the remittitur, Phillips testified that he returned to work the day after the accident, and there was no causal relationship shown between the arthritis in his knees which necessitated his retirement and the fall in the train.
¶ 13. However, the record does disclose an evidentiary basis to find that Phillips’ shoulders were injured in the fall. Phillips testified to the pain he felt in trying to lift his arms to shoulder height while performing his job duties for over two years, as well as pain in his everyday life activities. Dr. Dare explicitly stated his opinion that Phillips’ biceps and labrum tears were attributable to the accident, and that the rotator cuff tear was exacerbated by the injury. Even Illinois Central’s own expert witness noted that he suspected Phillips had a rotator cuff tear shortly before he was retired.
¶ 14. The factual nexus is very slim, considering that Phillips’ total claim was that his early retirement was necessitated by the train’s whipsaw action and his resulting fall. Nevertheless, the evidence is clear that the testimony of both experts, and Phillips himself, can be reconciled to indicate he suffered shoulder injuries that caused him to experience pain and suffering while still working, as well as after his retirement, and required surgery. Where a factual issue is presented to a jury, a directed verdict and/or judgment notwithstanding the verdict are not proper. Gatlin v. Methodist Med. Ctr., Inc., 772 So.2d 1023, 1026(¶ 6) (Miss.Ct.App.2000)(citing Pace v. Financial Sec. Life, 608 So.2d 1135, 1138 (Miss.1992)). Given our limited standard of review, we cannot find that the circuit court erred in denying Illinois Central’s motion for a directed verdict or in the alternative a judgment notwithstanding the verdict based upon insufficient evidence going to injury.
III. THE REMITTITUR
¶ 15. Phillips called Dr. Richard' Thompson to testify as to the wages and fringe benefits Phillips lost as a result of his involuntary retirement. Thompson calculated this figure at $811,078. Illinois Central contends that no medical testimony or any other evidence established a causal nexus between injuries sustained when the train stopped and the arthritis in Phillips’ knees which necessitated his retirement. This is a correct statement of the evidence. Dr. Munn’s records and testimony indicated that the arthritis in Phillips’ knees was present prior to his sustaining injuries from his falling in the train. Dr. Dare did not examine Phillips until approximately one year after his retirement. Even so, he testified the arthritis in Phillips’ knees appeared to be a longstanding condition and could not attribute the causation of that condition to Phillips’ falling.
¶ 16. In order to admit expert opinion testimony, the trial court must first determine the evidence to be relevant. See e.g., Winters v. State, 773 So.2d 973, 975(¶ 10) (Miss.Ct.App.2000); Oughton v. Gaddis, 683 So.2d 390, 395 (Miss.1996). Phillips failed to show a causal nexus between his retirement and the accident. While a trial court’s decision to admit expert testimony is addressed to the court’s discretion, the decision may not be arbitrary or clearly erroneous. Roberts v. Grafe Auto Co., Inc., 701 So.2d 1093, 1098 (Miss.1997). The circuit court noted this error, and entered a remittitur reducing the damage award to $85,485.04. The or *238 der found “that the jury verdict was against the overwhelming weight of the credible evidence due to the lack of causal connection between Plaintiffs knee injuries and the subject accident and due to the lack of causal connection between Plaintiffs disability and the subject accident. ...” Phillips contends that there is no reasonable means to ascertain how the circuit court reached the figure of $85,485.04, so the decision of the circuit court must be viewed as arbitrary.
¶ 17. Appellate review of the decision to grant a remittitur or additur is limited to an abuse of discretion standard of review. Boggs v. Hawks, 772 So.2d 1082, 1085(¶5) (Miss.Ct.App.2000); Rodgers v. Pascagoula Pub. Sch. Dist., 611 So.2d 942, 945 (Miss.1992). The same standard of review applies to review of the monetary calculation of a remittitur. Rawson v. Midsouth Rail Corp., 738 So.2d 280, 285 (¶¶ 9-12) (Miss.Ct.App.1999); Ross-King-Walker, Inc. v. Henson, 672 So.2d 1188, 1194(¶ 10) (Miss.1996). In this case, the circuit court listened to the witnesses and observed their demeanor. It discounted any evidence it found regarding Phillips’ retirement and instead attempted to calculate what figure recompensed Phillips for the pain he suffered in the accident, where he and Dr. Munn both testified his arthritis in his knees was aggravated causing more than the typical pain he encountered in a normal day, and for the shoulder injuries which caused him to have pain before and after retirement, as well as necessitating the surgery performed by Dr. Dare. The monetary calculation of pain and suffering is seldom precise. Given our discretionary review, we cannot say the amount awarded in the remittitur is an abuse of discretion.
IV. EVIDENCE OF DISABILITY PAYMENTS
¶ 18. Illinois Central contends that Phillips’ reference to lost disability during opening arguments opened the door to evidence of disability benefits, and it should have been allowed to introduce evidence of how much of these benefits Phillips had received. Phillips’ attorney stated that Phillips lost “such things as railroad retirement and disability and health insurance for he and his family and dental insurance for his family.” This was a misstatement. No evidence, or any other argument, was introduced concerning disability. Rather, Phillips tried to show his monetary loss from his lost wages and decreased retirement and health insurance benefits. As a general rule, evidence of collateral benefits, such as disability benefits, may not be introduced in a FELA case by a defendant, but a plaintiff may open the door to such testimony. See Santa Maria v. Metro-North Commuter R.R., 81 F.3d 265, 273 (2nd Cir.1996); Moses v. Union Pac. R.R., 64 F.3d 413, 416 (8th Cir.1995); Simmons v. Hoegh Lines, 784 F.2d 1234, 1236 (5th Cir.1986). The circuit court ruled that the isolated statement, coming early in the trial with no objection by Illinois Central, was insufficient to open the door. A trial court’s determination as to the admission of evidence is given deference. Morris v. Morris, 783 So.2d 681, 691(¶ 37) (Miss.2001). Even if we assumed this ruling was error, which we do not, any damages awarded from the mentioning of disability benefits were eliminated by the remittitur. An error may be found harmless if it did not affect the ultimate judgment of the court. Id. at 692(¶ 41). Therefore, the error, if any, would have been harmless; this issue has no merit.
V. JURY INSTRUCTIONS P-4 AND P-9
¶ 19. Illinois Central contends that instruction P-4 was contrary to the *239 law as stated in Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir.1997). Prior to that case, there had been some confusion within the fifth circuit as to whether in an action brought under FELA, the negligence standard, or the causation standard, or both, were relaxed from those standards found in common law and other statutory schemes. In Gau-treaux, the court clarified that under FELA causation is subject to a lesser standard than that in common law, but that negligence is subject to the familiar “ordinary prudence” standard. Id. at 335.
¶ 20. Illinois Central’s argument misstates the instruction. The instruction provided “the Plaintiff sustains his burden of proof ... when you find from a preponderance of the evidence that there is proof, even though entirely circumstantial, from which you may, with reason, infer that the negligence of the employer played any part, however small, in the injury.” This instruction properly states the law. The action that constitutes the negligence remains the common reasonable standard, but the causation standard is relaxed. Moreover, Illinois Central’s objection to this instruction went to the form of how it began with “the Plaintiff sustains his burden of proof .... ” as shifting the burden of proof. The objection was not based on Gautreaux, supra, nor was that case brought to the circuit court’s attention. Therefore the issue, if it had any merit, was waived. See e.g., Harris v. Lewis, 755 So.2d 1199, 1204(¶ 17) (Miss.Ct.App.1999).
¶ 21. Lastly, Illinois Central contends that the circuit court erred in granting instruction P-9. Illinois Central contends that this instruction allowed the jury to find that Phillips suffered permanent disability from the accident and award damages upon that finding. As previously discussed, Phillips failed to show a causal nexus between the accident and the retirement. Part of P-9 states damages could be based upon “[a]ny permanent disability proven by the Plaintiff.” A jury instruction must be based upon facts that a jury could reasonably infer from the evidence. Patton-Tully Transp. Co. v. Douglas, 761 So.2d 835, 845 (¶¶ 47-51) (Miss.2000). As such, the circuit court erred in granting the instruction. However, because the remittitur explicitly excluded any damages going to the retirement, this error was harmless. See Morris, 783 So.2d at 692(¶ 41).
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF SIMPSON COUNTY IS AFFIRMED. THE APPELLANT IS TAXED WITH ALL COSTS OF THIS APPEAL.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., concur.

. Generally, the denial of summary judgment is not appealable absent the procedures for obtaining interlocutory appeal. See, e.g., 10 Charles Alan Wright And Arthur R. Miller, Federal Practice And Procedure ¶ 2715 (1983). Therefore, we only address Illinois. Central’s issues going to its motions for a new trial or in the alternative judgement notwithstanding the verdict.