868 So.2d 346 (2003)
Russell D. WILLIAMS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01904-COA.
Court of Appeals of Mississippi.
July 29, 2003.
Rehearing Denied September 30, 2003.
Certiorari Denied March 18, 2004.
*348 Thomas H. Comer, Booneville, attorney for appellant.
Office of the Attorney General by Charles W. Maris, attorney for appellee.
Before McMILLIN, C.J., LEE and IRVING, JJ.
McMILLIN, C.J., for the Court.
¶ 1. Russell D. Williams was convicted in the Circuit Court of Prentiss County of rape and simple assault. He was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections for rape and six months in the Prentiss County Jail for simple assault. Feeling aggrieved, Williams has appealed his conviction. He asserts six separate issues in the appeal. We find these issues to be without merit and, therefore, we affirm the judgment of the circuit court.

I.

Facts
¶ 2. The State presented evidence at trial that tended to support the following version of events. On August 11, 1999, Russell Williams entered the home of his estranged wife, V.W., while she was sleeping. When V.W. awoke, she saw Williams standing at the foot of her bed. He announced his intention to have sexual intercourse with her. She resisted, but Williams threatened her with a gun and forced her to submit. V.W. later attempted to gain control over the gun, but while she was struggling to wrench it away from Williams, the gun went off. Williams then struck V.W. and she called out for help. Her son called the police and Williams was taken into custody. Williams was charged with rape and aggravated assault.

II.

Issue One: Jury Instructions
¶ 3. In his first issue, Williams asserts that the trial court erred in refusing to grant his proposed D-10 jury instruction. This instruction addressed the rape victim's duty to resist and stated in part:
[T]he victim of an alleged rape is under a duty to use all reasonable physical resistance available to her ... to prevent the rape unless proof also shows, beyond a reasonable doubt, that she surrendered because she reasonably feared that if she did not, she would suffer death or great bodily harm. A mere tactical surrender ... in the fact of assumed superior force is not enough.
¶ 4. The State contends that the pertinent issues were covered in instruction D-10a, which states:
[I]f after a consideration of all evidence in this case you believe, beyond a reasonable doubt, that Russell Williams had sexual relations with [V.W.], nevertheless, *349 you must still find him not guilty of raping [V.W.] unless you also find, beyond a reasonable doubt:
(1) That [V.W.] did not consent to such sexual intercourse, but that she instead used all reasonable physical resistance available to her under the circumstances then and there existing to prevent the sexual intercourse, or
(2) That [V.W.] submitted to such sexual intercourse because she reasonably feared that if she did not submit, she would suffer great bodily harm.
If the evidence fails to convince you, beyond a reasonable doubt in this regard, then it is your sworn duty to find the Defendant, Russell Williams, not guilty.
¶ 5. As a part of his argument against the State's assertion that instruction D-10a covered the relevant issues, Williams contends that, though the trial court may have intended to use D-10a instead of the requested D-10, instruction D-10a was never actually given to the jury insofar as the record reveals. Alternatively, he argues that the instruction was incomplete because it failed to inform the jury concerning the doctrine of tactical surrender.
¶ 6. As to Williams's first contention-that the instruction was never actually given to the juryWilliams points out that the instructions in the record do not include one marked D-10a bearing a file stamp by the clerk or a handwritten indication on the face of the instruction by the trial court indicating whether the proposed instruction was given, refused, or withdrawn as appears on all other instructions. The court reporter, as is apparently often the custom, did not transcribe the reading of the instructions by the trial court into the record, instead simply making an entry in the record in this form: "(JURY INSTRUCTIONS READ TO THE JURY BY THE COURT)." Nevertheless, when jury instructions were being discussed, the language appearing in what the State contends was instruction D-10a was discussed and the court indicated that it would be given. Additionally, during closing argument, defense counsel relied on the language of instruction D 10a in framing his argument when he said:
And the Court said that in consideration of all of the evidence in this case you believe beyond a reasonable doubt that Russell Williams had sexual relations with [V.W.], you must still find him not guilty of raping [V.W.], unless you also find beyond a reasonable doubt, that [V.W.] did not consent to such intercourse, but that she instead used all reasonable and physical evidenceresistance available to herto her under the circumstances, then and there existing to prevent the sexual intercourse, or that [V.W.] submitted to such sexual intercourse, because she reasonably feared if she did notif she did submit, she would suffer great bodily harm.
¶ 7. It is clear from the record that the trial court intended to give instruction D-10a, and though there is no readily apparent explanation as to why it was not marked and stamped in the same manner as the other instructions, we do not conclude, on the basis of the record before us, that the instruction was somehow overlooked through inadvertence. Rather, based on defense counsel's summation that followed just minutes after the court completed delivering the instructions to the jury, it appears substantially likely that the jury was properly instructed on the concept that a rape victim must physically resist the sexual advances of the rapist or submit under a reasonable fear of imminent great bodily harm in the form proposed as D-10a.
*350 ¶ 8. This conclusion brings us to Williams's second contention, i.e., that the instruction was an incomplete statement of the law on the subject because of its failure to address the concept of "tactical surrender." Williams cites Christian v. State for the proposition that a victim's tactical surrender to sexual advances in the face of apparently superior force on the part of the assailant is not sufficient resistance under the law of rape. Christian v. State, 456 So.2d 729, 733 (Miss. 1984). In Christian, however, the Mississippi Supreme Court affirmed a rape conviction when an instruction mentioning "tactical surrender" was refused and the only instruction given on the victim's duty to resist was quite similar to D-10a in this case. We understand Christian to mean that there is no requirement that the jury be specifically informed of the concept of "tactical surrender." Rather, it appears that "tactical surrender" is merely illustrative of one particular situation where one of the two underlying alternative concepts of law concerning the duty to resist comes into play; namely, that physical resistance need not be shown if the victim is in reasonable apprehension of imminent serious bodily injury or death. The jury in this case, as in Christian, was properly instructed as to the two fundamental concepts which it should use in dealing with the victim's duty to resist under the law. In that situation, we do not think it was reversible error for the court to decline to illustrate or attempt to define particular levels of resistance that would not satisfy the requirement to resist. Rather, it would appear that such considerations could be properly addressed in summation, using the court's instructions concerning force or fear of imminent serious injury as the foundation for the argument. The refusal of an instruction, even if it correctly states the law, is not reversible error if the instructions given, when read in their entirety, adequately inform the jury on the concepts of law with which it must deal. Hull v. State, 687 So.2d 708, 722 (Miss. 1997). We conclude that the jury was adequately instructed on the relevant issues without having heard proposed instruction D-10.

II.

Lesser-included Offense Charge
¶ 9. Next, Williams asserts that the trial court erred in refusing to give a lesser-included offense instruction on simple assault to the rape charge. The court refused, stating that in this scenario, simple assault could not reasonably be seen as a lesser-included offense of rape. The court noted, "I don't think any reasonable juror could determine that if the Defendant did not commit the offense of rape against the alleged victim in this case, that they could find that he committed a simple assault.... I believe the issue in this case is one of consent or lack thereof."
¶ 10. A lesser offense charge is correctly excluded if there is no evidentiary basis for it. Payton v. State, 642 So.2d 1328, 1335 (Miss.1994). In this instance, the court found that there was no evidentiary basis for a simple assault instruction as a lesser offense to rape. The court correctly identified the pivotal issue on which the rape charge turned, which was whether the victim had engaged in consensual sex or had submitted under the fear of imminent serious injury arising out of the fact that Williams was armed with a firearm. There was no contention by the defense that Williams attempted, but was unable to complete, the act of engaging in sexual intercourse through the exercise of raw physical forcea situation that might give rise to a lesser-included offense instruction. In the situation we face, we do not think that a lesser-included offense of *351 simple assault was indicated and it was not error to decline to instruct the jury in that manner.
¶ 11. Williams also contends that the trial court erred by declining to instruct the jury as to other possible lesser offense charges, including sexual battery. The only lesser offense charge actually requested by Williams was that of simple assault. Williams cannot complain on appeal about the refusal of the court to give an instruction that he never requested. See Mallett v. State, 606 So.2d 1092, 1095 (Miss.1992) ("We have held time and time again that a party may not complain on appeal of the failure to grant an instruction which was not at least in substance requested in the trial court."). We find this issue to be without merit.

III.

State's Exhibit 8
¶ 12. Williams's third assignment of error concerns the introduction into evidence of a packet of letters written by the defendant and apparently intended for the victim. The letters were found in an envelope in Williams's truck on the day of the alleged crime. The letters included a poem that opened with the phrase, "Something says you have to die...." These letters were found by police officers on the day of the assault. The letters were contained in an envelope labeled with the victim's first name found on the passenger seat of Williams's truck. The police found the truck parked in a field about one quarter of a mile from V.W.'s house. The State sought to have these letters introduced into evidence to show Williams's state of mind on the day in question. The defense objected on the ground that they were not relevant and that there was no indication of when they were authored, thereby raising an issue of possible remoteness in indicating the defendant's state of mind. The court admitted the letters into evidence.
¶ 13. On appeal, besides issues of relevance and remoteness, Williams asserts that the letters were not admissible because their prejudicial impact outweighed any probative value within the meaning of Mississippi Rule of Evidence 403. Williams also contends that the letters are evidence of past acts, offered solely to prove that Williams acted in conformity therewith, and, thus, inadmissible under Rule 404(b).
¶ 14. We disagree that Rule 404(b) plays any part in the issue of the admissibility of these letters since the act of writing a letter is not a prior bad act similar in any way to the act of rape. We do, however, find it necessary to address Williams's contention that the letters were improperly admitted after Williams raised an objection based on relevancy. The State claims the letters were probative on the issue of Williams's state of mind at the time the crime was committed.
¶ 15. The issue of remoteness is, we think, satisfied by evidence that the letters were apparently in the immediate possession of the defendant on the day of the crime. No matter when they may have been actually drafted, it is a fair inference that the subject or subjects addressed in the letters were prominent in Williams's consciousness as shown by the fact that the letters were discovered on the front seat of his truck at the place he had parked it to go to the victim's residence.
¶ 16. Relevance itself presents a closer question. A thorough reading of the contents of all the letters does not necessarily, in our view, indicate a person intent on committing an act of rape. The letters do, however, seem to demonstrate a person having a certain obsessive interest *352 in the victim. Whether that makes it more likely that Williams, involved in obsessive thought concerning his estranged wife, would force her to engage in non-consensual sex (which is the test of relevancy set out in Mississippi Rule of Evidence 401), appears problematic at best. Nevertheless, we acknowledge the broad discretion afforded the trial court in controlling the admissibility of evidence. McKee v. State, 791 So.2d 804, 810 (¶ 22) (Miss.2001). Conceding that broad discretion, we cannot say that the decision to admit these letters, for whatever probative value the jury might find them to have, was an abuse of the court's discretion of sufficient magnitude as to require this Court to intervene. At least in part, we base this decision on the fact that the contents of the letters do not appear particularly prejudicial under a Rule 403 analysis. Rather, the contents of the letters would appear equally as likely to invoke feelings of sympathy for the defendant as to cause him to be improperly prejudiced in the eyes of the jury. Thus, though their introduction may have had little probative value as to the pivotal issues of the case, it seems likewise true that there was no real prejudice to the defense in permitting the jury to discover his apparently strong, perhaps even excessively strong, emotional ties to his estranged wife.

IV.

Mistrial
¶ 17. During the jury deliberations, the jury sent a note to the judge asking if the victim had said "stop" or "no" prior to the alleged rape. The judge responded by instructing the jury to rely on their own recollection of the testimony. A few hours later, the jury reported that it was deadlocked on both charges. The defense then moved for a mistrial and objected to any further instructions being given to the jury. The court denied the motion and brought the jury out to determine the extent of the deadlock, which was discovered to be 11 to 1. The court asked the foreman if he thought further deliberations would be helpful. The foreman responded that he did not "believe six months would help."
¶ 18. The court gave an additional instruction to the jury, over the defense's objection, known as a "modified Allen charge." The court also verbally admonished the jury that "we've tried this case for two days. You've only been deliberating now for less than three hours. I'm going to give you another instruction and then I'm going to have you return to the jury room...." The court then sent the jury back to deliberate, and instructed the bailiff to inquire as to whether or not any of the jurors would desire dinner. At this point, the defense again moved for a mistrial, stating as grounds the foreman's assertion that the deadlock could not be resolved. The motion was denied and the court announced it would recess until the jury came back with a verdict. The record indicates that the court was called to order sometime thereafter and the jury announced its verdicts, finding Williams guilty of rape on count one and guilty of simple assault on count two.
¶ 19. On appeal, Williams asserts that the trial court committed reversible error in referring to the amount of work that went into the trial when instructing the jury to resume deliberations. Williams relies upon the ruling of Brantley v. State, 610 So.2d 1139 (Miss.1992), which held that it is reversible error to refer to such matters when instructing a deadlocked jury to resume deliberations. Williams asserts that the trial court's instruction to the jury was similar to that proscribed by Brantley. We would agree that it would have been better for the trial *353 court not to have made the oral remarks concerning the investment of time and resources in the case. Nevertheless, the actual formal charge given to the jury instructing them to continue to attempt to resolve their apparent impasse was one approved by the Mississippi Supreme Court. Sharplin v. State, 330 So.2d 591, 596 n. 1 (Miss.1976). We must assume that the court followed that instruction in its further deliberations. Payne v. State, 462 So.2d 902, 904 (Miss.1984). We do not think the court's verbal remarks that preceded a correct instruction so tainted the jury in its work as to render its subsequent verdict so suspect that we ought to reverse. Additionally, Williams made no specific objection to the court's comments. "Failure to raise a contemporaneous objection to the judge's instruction procedurally bars [the defendant] from arguing this issue on appeal." Walker v. State, 729 So.2d 197, 202 (¶ 19) (Miss.1998). To the extent that the court's comments were prejudicial, the matter could easily have been corrected had the matter been called to the court's attention in a timely way.
¶ 20. The court also inquired as to whether the jurors desired that an evening meal be ordered for them. Williams asserts that the court's inquiry was reversible error because, coming as it did on Friday evening, the inquiry contained the implication that the court might keep the jurors into the weekend, thereby bringing improper pressure on them to resolve their deadlock.
¶ 21. We disagree that the court's inquiry into the jurors' desire to take a break for dinner was an attempt to coerce them into reaching a verdict. It is the duty of the trial court to see to the welfare of the jury during the course of the trial and during their subsequent deliberations. To have neglected their basic needs after a long day of difficult work would, itself, have seemed a failure of the court to carry out its responsibilities in that area.

V.

Motion for Continuance
¶ 22. During trial, the State sought to introduce into evidence photographs depicting new locks that had been placed upon V.W.'s doors. These photographs were to support V.W.'s testimony that, when she discovered that her estranged husband was returning to town, she took measures to ensure her safety against him. Williams objected to allowing the photographs into evidence, claiming the State had not disclosed the photographs in a timely manner under applicable rules of discovery. The objection was overruled and the photographs were admitted.
¶ 23. The State contends that the photographs were available at any time for inspection by defense attorneys and that counsel simply failed to avail himself of the opportunity. Further, the State argues that the issue was waived because the defense's pre-trial continuance motion dealt with another matter but failed to raise the allegedly untimely production of the photographs.
¶ 24. Williams filed an ore tenus motion for continuance immediately prior to the commencement of trial based on the State's allegedly untimely production of certain physical evidence, but did not mention the photographs. The court apparently accepted the State's contention that the prosecution's physical evidence had been available for inspection for an extended period and that the defense had simply delayed in availing itself of the opportunity to inspect it. On that basis, the continuance motion was denied. We agree that the defense's failure to raise any other available issues relating to alleged discovery violations acted as a waiver. *354 Aside from that, we do not think the admission of the photographs, even if admitted in error, affected the fundamental fairness of the trial to the extent that it would constitute reversible error. The victim was permitted to testify that she had changed the locks at her home upon learning of the defendant's return to the area. It does not appear that the defense was contending that the victim was being untruthful in that testimony. In that situation, photographs of the doors themselves showing what is purported to be the new locks already testified to by the victim appear rather benign in terms of actual impact on the strength of the prosecution's case. "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected...." M.R.E. 103(a). These photographs did not impact a "substantial right" of the defendant in this case.

VI.

Sufficiency and Weight of the Evidence
¶ 25. Williams raises in his final issue the argument that the evidence was insufficient as a matter of law to support the rape conviction. Alternatively, he says that the verdict was against the weight of the evidence. Williams's contention, as to both issues, is that, because the victim did not physically resist his advances, and because the gun which the State contends put the victim in fear of imminent serious injury or death was physically out of his reach when the victim submitted to the act of intercourse, he could not be found guilty of rape.
¶ 26. A challenge to the sufficiency of the evidence requires a determination that, as to one or more essential elements of the crime, the State's evidence is so lacking that a fair-minded juror could only find the defendant not guilty. McClain v. State, 625 So.2d 774, 778 (Miss. 1993). In reviewing the denial of a directed verdict of JNOV motion on appeal, this Court must view all the evidence in the light most favorable to upholding the verdict. Id. In that light, we conclude that the victim's testimony that she felt compelled to submit to the defendant's demands for sexual relations because he was armed with a gun and that she felt "like a trapped animal" in that situation was sufficient for the jury to infer that her capitulation was more than the tactical decision to surrender that is urged by the defense. The fact that the gun may not have been immediately at hand to Williams during the act of intercourse does little, if anything, to diminish a reasonable fear on the part of the victim that her failure to succumb to his demands could result in a decision on his part to use the weapon against her. We think that the jury could conclude that there was the requisite measure of immediacy in the threat to her person to make her decision to submit an involuntary one within the meaning of the rape laws of this State.
¶ 27. In situations where the evidence is sufficient to convict, a defendant may, nevertheless, be entitled to a new trial if the trial court determines that the verdict is so against the weight of the credible evidence that it would constitute a manifest injustice to permit the guilty verdict to stand. Wetz v. State, 503 So.2d 803, 812 (Miss.1987). Such a determination, involving as it does subjective evaluations of the evidence by the trial court, vests that court with substantial discretion in ruling on a new trial motion. Long v. Harris, 744 So.2d 839, 842 (¶ 12) (Miss.Ct.App. 1999). If a new trial motion on that ground is denied and made the subject of appeal, this Court must review the record in the light most favorable to sustaining the conviction and determine whether the *355 trial court abused its discretion. Id. To a large extent, this case turned on the decision of the jurors, sitting as finders of fact, as to whether the State's evidence or that presented for the defense appeared more credible and worthy of belief. Such determinations, once made, are entitled to substantial deference and an appellate court is not at liberty to simply substitute its judgment for that of the jury on the issue of what evidence appears more persuasive. Veal v. State, 585 So.2d 693, 695 (Miss. 1991). The jury, by its verdict, indicated that it found the victim to be a trustworthy and believable witness. Her testimony was not incredible on its face nor was it contradicted by other, more compelling, evidence. Neither was she substantially impeached by any of the recognized methods of casting a witness's testimony into doubt. In that situation, we cannot find any legitimate basis to disturb the jury's decision to accept her version of events and convict the appellant Williams of the crimes laid out in the indictment.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF PRENTISS COUNTY OF CONVICTION OF COUNT I RAPE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS; COUNT II SIMPLE ASSAULT AND SENTENCE OF SIX MONTHS IN THE PRENTISS COUNTY JAIL IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PRENTISS COUNTY.
KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, and GRIFFIS, JJ., concur. CHANDLER, J., dissents without written opinion.