906 So.2d 836 (2004)
Terry DOSS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01162-COA.
Court of Appeals of Mississippi.
December 14, 2004.
*837 Luanne Stark Thompson, Aberdeen, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
KING, C.J., for the Court.
¶ 1. Terry Doss was convicted of the sale of cocaine in the Circuit Court of Oktibbeha County, Mississippi. He was sentenced to a term of twenty years in the custody of the Mississippi Department of Corrections, with five years of post-release supervision. Aggrieved by the conviction and sentence, Doss has appealed and raised the following issues which we quote verbatim:
I. Whether the trial court erred when it denied the defendant's motion for a new trial based upon juror misconduct.
II. Whether the trial court erred in overruling the defendant's motion for a directed verdict and whether the verdict of this case was against the overwhelming weight of the evidence.

FACTS
¶ 2. On January 16, 2002, Deborah Moore worked with Brett Watson and two other officers of the Tri-County Narcotics Task Force in Oktibbeha County. Moore agreed to work as a confidential informant as a result of a prior arrest for the sale of cocaine.
¶ 3. In preparation for a controlled buy, Moore met with the officers at a pre-arranged location where she was searched. The officers placed audio and video equipment in Moore's car to capture an audio and video recording of the event, and gave her forty dollars (money from the Tri-County Narcotics Task Force funds) to purchase the narcotics.
¶ 4. According to Moore, she drove to Brooksville Gardens apartments located in Starkville, in an attempt to purchase narcotics. The officers conducted surveillance by listening to the audio transmission. At the apartment, Moore picked up a man named Bush. Moore told Bush of her quest to buy drugs. He indicated an ability to find some drugs. They drove to a duplex, where Moore met with an individual later identified as Terry Doss. Moore told Doss that she was looking for marijuana and crack cocaine. Doss told her that he didn't have any marijuana, but that he had some crack cocaine. Moore then bought a rock of crack cocaine from Doss for twenty dollars.
*838 ¶ 5. After exchanging the money for the drugs with Doss, Moore returned to the pre-buy location to meet with the officers. She gave the officers the substance and the balance of the purchase money. The officers searched Moore again, and removed the videotape from Moore's car. Officer Watson placed the substance in a plastic bag. The substance was later taken to the Tupelo Crime Laboratory, where it was determined to contain cocaine.
¶ 6. During the voir dire examination, the trial judge asked if any jurors knew Doss or any member of his immediate family. Four prospective jurors answered that they either knew Doss or a member of his family. The trial judge inquired into the nature of the respective relationships, and then asked each of them if they were selected as a juror whether they could base their verdict on the evidence and the instructions of the court. They all agreed that they could. Subsequently, the court granted the State's challenge for cause of two of these prospective jurors. The State exercised a peremptory challenge to the third, and the fourth prospective juror was not selected for the jury in this case.
¶ 7. The trial then proceeded and Doss was convicted of one count of the sale of cocaine and sentenced to a term of twenty years in the custody of the Mississippi Department of Corrections, five years of post-release supervision, and ordered to pay all court costs and a fine of $5,000. Immediately following the trial, Doss' sister reported to him that, Mrs. Peggy Jones (juror number 26), the mother of one of his prior girlfriends had been on the jury. Doss thereafter filed a motion for a new trial based on juror misconduct. The trial court denied his motion, and Doss appealed.

STANDARD OF REVIEW
¶ 8. A motion for a new trial challenges the weight of the evidence. Brooks v. State, 761 So.2d 944(¶ 8) (Miss.Ct.App.2000). "[A] motion for new trial is discretionary with the trial judge and this Court will not order a new trial unless it is convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Watson v. State, 722 So.2d 475(¶ 23) (Miss.1998).
¶ 9. A motion for a directed verdict challenges the sufficiency of the evidence. Williams v. State, 868 So.2d 346(¶ 26) (Miss.Ct.App.2003).
Once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. This Court will reverse only where one or more elements of the offense are not proven.
Jones v. State, 881 So.2d 209(¶ 41) (Miss.Ct.App.2003) (citation omitted).

ISSUES AND ANALYSIS

I.

Whether the trial court erred when it denied Doss' motion for a new trial based on juror misconduct.
¶ 10. Doss asserts that juror Peggy Jones withheld information during voir dire that was material to the selection of a fair and impartial jury. Doss claims that Mrs. Jones failed to answer when asked whether any of the prospective jurors knew him. Mrs. Jones acknowledged during the hearing on Doss' motion for a new trial that she knew of Doss, both from dating her daughter years ago and from *839 seeing him in the community. The transcript reflects the following:
Q. And did you in fact respond to that? (question of whether anyone knew Doss)
A. No, ma'am, I didn't.
Q. Okay. And why did you not, Mrs. Jones?
A. I  let me just say this, I don't know Terry. I know of Terry. I know of Terry, and when they axed [sic] I just didn't raise my hand. I'm  that's  that's all I can say on that.
Q. Okay. You say you know of him?
A. Yes, ma'am.
Q. But you didn't know him personally is what you're saying?
A. Well, personally, you know just like what I consider personally is knowing about like being in your home to visit wid [sic] you, eat wid [sic] you and stuff like that, you know what I'm saying.
¶ 11. Although Doss testified that he would recognize Mrs. Jones as his former girlfriend's mother if he saw her, he maintains that he was not aware of Jones' presence on the jury because he was focused on his case and did not pay attention to the jury. Furthermore, Doss maintains that he was not aware of the significance of Jones' name because he assumed that her last name was Williams as was her daughter's last name at the time she and Doss were dating.
¶ 12. Doss' attorney maintains that Jones should have been disqualified for withholding information during voir dire pursuant to Mississippi Code Annotated Section 13-5-67 (Rev.2002). Doss cites Myers v. State, 565 So.2d 554, 558 (Miss.1990), where, during voir dire, a juror failed to respond on three separate occasions to defense counsel's question as to whether any relative or member of family had been involved in a criminal proceeding. The supreme court noted that "Following a jury's verdict, where a party shows that a juror withheld substantial information or misrepresented material facts, and where a full and complete response would have provided a valid basis for challenge for cause, the trial court must grant a new trial. . . ." Id. at 558.
¶ 13. However, the State cites Odom v. State, 355 So.2d 1381, 1383 (Miss.1978), where the juror had failed to disclose the fact that his brother was a police officer in the area where the crime was committed when asked during the voir dire whether anyone had a close relative who was involved in law enforcement. Id. at 1381-82. Although the case was reversed and remanded for a new trial, the supreme court held the following:
[When] a prospective juror in a criminal case fails to respond to a relevant, direct, and unambiguous question presented by defense counsel on voir dire, although having knowledge of the information sought to be elicited, the trial court should, upon motion for a new trial, determine whether the question propounded to the juror was (1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited. If the trial court's determination of these inquiries is in the affirmative, the court should then determine if prejudice to the defendant in selecting the jury reasonably could be inferred from the juror's failure to respond. If prejudice reasonably could be inferred, then a new trial should be ordered. It is, of course, a judicial question as to whether a jury is fair and impartial and the court's judgment will not be disturbed unless it appears clearly that it is wrong.
Id. at 1383.
¶ 14. The question of whether any of the prospective jurors knew Doss was *840 clearly relevant to the voir dire process and the impaneling of a fair and impartial jury. In its order denying Doss' motion for a new trial, the court found that the question at issue was propounded clearly and unequivocally. The court further found that Jones had knowledge of the answer, and should have responded.
¶ 15. At the hearing on Doss' motion for a new trial, Jones testified that she did not know why she did not respond when asked if anyone knew Doss, adding that she did not know Doss, only that she knew of him from seeing him around the community. She further testified to being aware from her daughter that Doss had dated her daughter some eight to ten years before when her daughter was in high school. However, Jones had no idea how long Doss and her daughter had dated, or who else her daughter had dated. Jones also testified that her last name had been Jones for the past sixteen years which would include the period when Doss was dating her daughter. Finally, Jones testified that she had no ax to grind with Doss, no issues or problems with him, no reason at all to harbor any type of grudge against him, and that she was not aware of any hard feelings between Doss and her daughter.
¶ 16. In denying Doss' new trial motion, the trial court acknowledged that Doss might well have struck Jones from the jury panel had she answered affirmatively to knowing him. Doss testified that he did know Jones. When Jones was tendered as a prospective juror, Doss had several remaining peremptory challenges. The trial court found incredible Doss' testimony that he was unaware of Jones' presence on the jury until after trial. Instead, the court found it more likely that Doss believed Jones would be a favorable juror, and therefore did not challenge her. A defendant who wishes to claim error has an obligation to call to the court's attention matters of which he is aware, Read v. State, 430 So.2d 832, 841 (Miss.1983) and should he fail to do so, he waives any objection. McNeal v. State, 617 So.2d 999, 1003 (Miss.1993).
¶ 17. This Court applies an abuse of discretion standard to the denial of a new trial request. Watson, 722 So.2d at (¶ 23). The record before this Court does not suggest that the trial court abused its discretion.

II.

Whether the trial court erred in overruling Doss' motion for directed verdict because the verdict was against the overwhelming weight of the evidence.
¶ 18. Doss maintains that the verdict rendered by the trial court was against the overwhelming weight of the evidence. Doss points out that the only corroborating evidence to Moore's identification of him was the videotape of the drug buy, and that the videotape only showed the bottom half of the person's face who sold the cocaine to Moore. However, Moore testified that Doss sold her the cocaine.
¶ 19. The State contends that Moore's identification of Doss as the seller was sufficient. The State points out that she was subjected to cross-examination, and Doss was allowed to question her about her previous arrest and motivation for working as a police informant. The State also points out that the jury viewed the videotape of the drug buy.
¶ 20. In this case, Moore testified that she had known Doss for approximately two or three years, and that she saw him just about every day in the area when she visited her mother. The record reflects that Moore identified Doss at trial as the person who sold her the cocaine. Finally, *841 the record shows that the jury viewed the videotape of the drug transaction. The question of Moore's credibility was for the jury to resolve, as was the question of who was seen and heard on the videotape. Doby v. State, 532 So.2d 584, 591 (Miss.1988). This issue is without merit.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF OKTIBBEHA COUNTY OF CONVICTION FOR THE SALE OF COCAINE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS OF POST-RELEASE SUPERVISION, AFTER RELEASE FROM CONFINEMENT UNDER CERTAIN TERMS AND CONDITIONS, AND FINE OF $5,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.