904 A.2d 534

**Willard H. WILLIAMS**

v.

**STATE of Maryland.**

**No. 121, Sept. Term, 2004.**

Court of Appeals of Maryland.

Aug. 3, 2006.

100

Brian J. Murphy, Assigned Public Defender (Nancy S. Forster, Public Defender, on brief), Baltimore, for Appellant.

Brian S. Kleinbord, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of MD, on brief), Baltimore, for Appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BELL, Chief Judge.

The dispositive issue in the case *sub judice* is whether the defendant is entitled to a new trial as a result of a juror's non-disclosure, during voir dire, of the fact that a member of that juror's family was employed as a secretary in the State's Attorney's Office ("SAO") that was prosecuting the defendant and when the relationship was not discovered until after the trial had been completed. This issue is one of first impression for this Court. A similar, but certainly not identical, issue has

been considered by the Court of special Appeals, however. It was first addressed in *Burkett v. State*, 21 Md.App. 438, 319 A.2d 845 (1974). In that case, the trial court voir dired the juror, albeit after the fact, with regard to the reason for the nondisclosure, concluding that it was inadvertent. The intermediate appellate court, in affirming, formulated a test:

"[T]he grant of a new trial, where information inadvertently is withheld by a juror's failure to respond to voir dire inquiry, should be left to the sound discretion of the trial judge unless:

"(a) actual prejudice to the accused is demonstrated, or
"(b) the withheld information, in and of itself, gives rise to a reasonable belief that prejudice or bias by the juror against the accused is likely."

*Id.* at 445, 319 A.2d at 849. We agree with this analytical construct for the circumstances there presented. It does not, as we shall see, resolve the factual scenario that this case presents.

The appellant, Willard H. Williams ("Williams"), and his co-defendant, Kevin Jones ("Jones"), were charged with distribution of cocaine and related offenses and tried, by jury, in the Circuit Court for Baltimore City. During the voir dire process, the trial judge asked the venire, *inter alia*, whether:

"... any member of the panel, any member of your immediate family or household or anyone else that you're close to and get significant advice from, been in the past, going to be in the future or are currently employed or doing business with or otherwise closely associated with any law enforcement agency? That includes the City Police, the County Police, the State Police, or any other kind of police. The attorney General for the State of Maryland or any other State, the State's Attorney's Officer [sic], Baltimore City, Baltimore County, and other State or District Attorney's office, the United State's Attorney Office for the Federal District of Maryland or any other federal district, Federal law enforcement agencies including but not limited to FBI, DEA, ATF, INS, IRS, Customs, Coast Guard, Military Police, NSA, CIA, Homeland Security or any other type of

outfit that either has a security function or has an investigative function? Also, include parole and probation agents, sheriff's departments, correctional officers and other employees of correctional facilities and people who work for private security companies, then be prepared to tell us about that when you come up."

Juror 560, Ernestine Lane, as later discovered, was the sister of a secretary in the State's Attorney's Office. Nevertheless, she did not respond to the question. She had responded to other venire questions, however, as follows:

"The Court: Any information you'd like to share with us?

"Juror 560: No.

"The Court: Ever been in a courtroom before—witness, juror, spectator?

"Juror 560: Juror.

"The Court: Civil, criminal or not picked? Did you have to award money or did you have to vote somebody not guilty or guilty?

"Juror 560: Award money.

"The Court: Anything about that experience that would cause you to be unfair to either of these two gentlemen or the State?

"Juror 560: No."

Ms. Lane was seated as juror number four and served on the jury.

Both Williams and Jones were convicted of the crimes charged. When they were informed by the State of Ms. Lane's familial relationship with an employee of the State's Attorney's Office, they offered the non-disclosure as one of the grounds for their motion for a new trial. Emphasizing the non-disclosure of the familial relationship—"the juror never disclosed that during voir dire"—and relying on *Leach v. State,* 47 Md.App. 611, 425 A.2d 234 (1981) and *Burkett v. State,* 21 Md.App. 438, 319 A.2d 845 (1974), to which he referred the Court, Williams argued [1]:

---

1. Counsel for Jones made a similar argument, more specifically pointing out the harm of the non-disclosure:

"Both are similar situations where there were voir dire questions, information was obviously withheld or not disclosed and the Court says; the withheld information in and of itself gives rise to a reasonable belief that prejudice or bias by a juror against the accused is likely. I think in this case the fact that we did not know that this juror had a relationship with the State's Attorney's Office that it is reasonable and the presumption is that there was a bias. And based on that I would ask the Court to Grant my Motion for a new trial."

The prosecutor confirmed that Ms. Lane was "the sister of one of the secretaries in my office," but, because the he "ha[d] not asked Ms. Lane, ha[d] not called Ms. Lane, had any contact with Ms. Lane about the situation," he was unable to respond to the court's question as to why the juror did not disclose the relationship.[2] No other information being avail-

---

"The first issue was that apparently one of the jurors, whose name I don't have at this point in time, on the jury panel never responded to the question was she dealing with, related to or acquainted with anyone employed by the State's Attorney's Office of Baltimore City. I was advised a couple days after the verdict that apparently one of the jurors contacted the, apparently is related to the sister of the, counsel for the State, Ms. Potter, and I'm sorry, to the secretary for Ms. Potter, apparently is her sister, and contacted Ms. Potter a day or so after the trial indicating that Ms. Potter informed us of that. So therefore, our first issue on the Motion for New Trial would have been that the juror did not, in fact this question was asked to her actually twice. That was the original question asked and she did affirmatively to it [sic]. Then the question was asked as a test question at [counsel for the defense's] request because he felt a lot of the jurors were not responding to the questions. She did not respond to that question the second time. It is our position that obviously we would have used our challenge, our peremptory challenge, at least and obviously would have moved for cause first and if that would not have been granted use a peremptory challenge to strike her from the panel . . . ".

**2.** We note that the exact relationship between the juror and the State's Attorney's Office is not clear from the record; that is, it is unknown if the family-related secretary was the secretary for counsel for the State specifically, or for the office generally. At the Motion for New Trial for Kevin Jones, defense counsel noted:

"I was advised a couple days after the verdict that apparently one of the jurors contacted the, apparently is related to the sister of the,

able, Ms. Lane was not called to testify as to the reason for the non-disclosure, the prosecutor submitted and the court denied the new trial motion, ruling:

"Well that's pretty remote; a sister of a secretary in the State's Attorney's Office. If the Court of Appeals wants to grant a new trial on that basis they're more than welcome to do it. We struggle in Baltimore with an electorate with less than a high school education, that is not very sophisticated, and doesn't understand the simplest of questions. If the Court of Appeals wants to create laboratory circumstances and create precision in each trial, which pre-supposes that jurors will come in here that come in and understand simple English questions, or a defendant gets multiple trials at great expense to the taxpayers, let them do so. I'm not going to. Motion for New Trial is denied."

Williams filed an appeal to the Court of Special Appeals. We, on our own motion, issued the writ of certiorari while the case was pending in that court. *Williams v. State,* 384 Md. 581, 865 A.2d 589 (2005). For the reasons that follow, we shall reverse the judgment of the Circuit Court for Baltimore City.

## A.

The Sixth Amendment to the United States Constitution,[3] as applied to the States by the Fourteenth Amend-

---

counsel for the State, Ms. Potter, and I'm sorry, to the secretary for Ms. Potter, apparently is her sister, and contacted Ms. Potter a day or so after the trial indicating that Ms. Potter informed us of that."
Further, at the Motion for New Trial for Willard Williams, counsel for the State noted:
"The juror is number 560, was number 560, her name is Ernestine Lane. She's the sister of one of the secretaries in my office ..."
Regardless, our holding is not disturbed by this uncertainty.

3. U.S. Const., amend. VI provides:
"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury* of the State and district wherein the crime shall have been committed; which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining

ment, guarantees criminal defendants an impartial jury trial. *Attorney Grievance Comm'n of Maryland v. Gansler*, 377 Md. 656, 675, 835 A.2d 548, 558 (2003); *Jenkins v. State*, 375 Md. 284, 300, 825 A.2d 1008, 1017 (2003); *Ware v. State*, 360 Md. 650, 670, 759 A.2d 764, 774 (2000). There is a similar guarantee provided by Article 21 of the Maryland Declaration of Rights.[4] *Bristow v. State*, 242 Md. 283, 289, 219 A.2d 33, 36 (1966). *See Gansler*, 377 Md. at 675, 835 A.2d at 559; *Jenkins*, 375 Md. at 299, 825 A.2d at 1017. The guarantee is not that the juror will not have formed or expressed an opinion with regard to the matter at issue, only "that he shall be without bias or prejudice for or against the accused, and that his mind is free to hear and impartially consider the evidence, and to render a verdict thereon without regard to any former opinion or impression existing in his mind, formed upon rumor or newspaper reports." *Garlitz v. State*, 71 Md. 293, 300, 18 A. 39, 41 (1889). *See Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751, 756 (1961); *Bristow*, 242 Md. at 288–89, 219 A.2d at 36; *Kujawa v. Baltimore Transit Co.*, 224 Md. 195, 201, 167 A.2d 96, 98 (1961); *Newton v. State*, 147 Md. 71, 76, 127 A. 123, 126 (1924). Thus, "[t]he potency of the Sixth Amendment [and Article 21] right to a fair trial relies on the promise that a defendant's fate will be determined by an impartial fact finder who depends solely on the evidence and argument introduced in open court." *Allen v. State*, 89 Md. App. 25, 42, 597 A.2d 489 (1991), *cert. denied*, 325 Md. 396, 601 A.2d 129 (1992). Of course, a "fundamental tenet of our legal

---

witnesses in his favor, and to have the assistance of counsel for his defence." (Emphasis added).

4. Article 21 of the Maryland Declaration of Rights provides

*"Rights of accused; indictment; counsel; confrontation; speedy trial; impartial and unanimous jury.*

"That in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defence; to be allowed counsel; to be confronted with the witnesses against him; to have process for his witnesses; to examine the witnesses for and against him on oath; and to a speedy trial *by an impartial jury*, without whose unanimous consent he ought not to be found guilty." (Emphasis added).

system" is that, to be impartial, the fact finder must presume the innocence of the criminal defendant. *Wright v. State*, 312 Md. 648, 652, 541 A.2d 988, 990 (1988) (*citing Johnson v. State*, 227 Md. 159, 163, 175 A.2d 580, 582 (1961)).

Critical in ensuring that the guarantee is meaningful is the voir dire of the venire, the purpose of which is to exclude from the venire potential jurors for whom there exists cause for disqualification, so the jury that remains is capable of deciding the matter before it based solely on the facts presented, and uninfluenced by extraneous considerations. *Hill v. State*, 339 Md. 275, 279, 661 A.2d 1164 (1995). As we put it in that case,

"Undergirding the voir dire procedure and, hence, informing the trial court's exercise of discretion regarding the conduct of the voir dire, is a single, primary, and overriding principle or purpose: 'to ascertain "the existence of cause for disqualification." ' "

*Id.* at 279, 661 A.2d at 1166 (*quoting McGee v. State*, 219 Md. 53, 58, 146 A.2d 194, 196 (1959), in turn *quoting Adams v. State*, 200 Md. 133, 140, 88 A.2d 556, 559 (1952)). *See Jenkins*, 375 Md. at 331, 825 A.2d at 1035–36 ("[O]ne of the ways to protect a defendant's constitutional right to an impartial jury is to expose the existence of factors which could cause a juror to be biased or prejudiced through the process of *voir dire* examination."); *Dingle v. State*, 361 Md. 1, 9, 759 A.2d 819, 823 (2000) ("Voir dire, the process by which prospective jurors are examined to determine whether cause for disqualification exists, *see Boyd v. State*, 341 Md. 431, 435, 671 A.2d 33, 35 (1996), is the mechanism whereby the right to a fair and impartial jury, guaranteed by Art. 21 of the Maryland Declaration of Rights, ... see *Grogg v. State*, 231 Md. 530, 532, 191 A.2d 435, 436 (1963), is given substance. *See Hill v. State*, 339 Md. 275, 280, 661 A.2d 1164, 1166 (1995); *Bedford v. State*, 317 Md. 659, 670, 566 A.2d 111, 116 (1989)").

Thus, consistent with the overarching purpose of voir dire in a criminal case in Maryland, to ensure a fair and impartial jury, *Boyd v. State*, 341 Md. 431, 435, 671 A.2d 33, 35

(1996), the proper focus is the venire person's state of mind, specifically, whether there is some bias, prejudice, or preconception. *State v. Thomas*, 369 Md. 202, 210, 798 A.2d 566, 570 (2002). To explore that possibility, a defendant is entitled to have the trial judge ask voir dire questions aimed at uncovering that prejudice, *Brown v. State*, 220 Md. 29, 35, 150 A.2d 895, 897 (1959), including any bias arising out of the nature of the crime with which the defendant is charged. *Thomas*, 369 Md. at 214, 798 A.2d at 573 (*citing Alexander v. R.D. Grier & Sons Co.*, 181 Md. 415, 419, 30 A.2d 757, 759 (1943)). *See also Sweet v. State*, 371 Md. 1, 806 A.2d 265 (2002) (applying *Thomas*).

▮ If there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect the juror's decision of the case, *Brown*, 220 Md. at 35, 150 A.2d at 897–98, or "any circumstances which may reasonably be regarded as rendering a person unfit for jury service," *Bedford*, 317 Md. at 671, 566 A.2d at 117, *quoting Corens v. State*, 185 Md. at 564, 45 A.2d at 343, the defendant may challenge that juror for cause, and, if that fails, strike him or her peremptorily.[5] In this case, the members of the venire were asked about their relationship to law enforcement officials, personnel or agencies, undoubtedly because the trial judge, to whom discretion to determine the scope of voir dire is entrusted, *see Davis v. State*, 333 Md. 27, 60, 633 A.2d 867, 883–884 (1993), concluded that, while not one of the mandatory areas of inquiry,[6] it was

5. See Maryland Code (1973, 2002 Replacement Vol., 2005 Supp.) § 8–301 of the Courts and Judicial Proceedings Article.

6. In *Dingle v. State*, 361 Md. 1, 11 n. 8, 759 A.2d 819, 824 n. 8 (2000), listed the areas of mandatory inquiry this Court has identified: "racial, ethnic and cultural bias, *Hernandez v. State*, 357 Md. 204, 232, 742 A.2d 952, 967 (1999); *Hill v. State*, 339 Md. 275, 285, 661 A.2d 1164, 1169 (1995); *Bowie v. State*, 324 Md. 1, 15, 595 A.2d 448, 455 (1991), religious bias, *Casey v. Roman Catholic Archbishop*, 217 Md. 595, 606–07, 143 A.2d 627, 632 (1958), predisposition as to the use of circumstantial evidence in capital cases, *Corens v. State*, 185 Md. 561, 564, 45 A.2d 340, 343–44 (1946), and placement of undue weight on police officer credibility. *See Langley v. State*, 281 Md. 337, 349, 378 A.2d 1338, 1344 (1977)," pointing out that each category involves "potential

an area that "entail[s] potential biases or predispositions that prospective jurors may hold which, if present, would hinder their ability to objectively resolve the matter before them." *Id.* at 36, 633 A.2d at 871–72.

### B.

As we have seen, the Court of Special Appeals has addressed the issue where a juror failed to disclose a relevant relationship with the law enforcement community or personnel. In *Burkett v. State*, 21 Md.App. 438, 319 A.2d 845 (1974), appellant Burkett, having been convicted of first degree murder in the Criminal Court of Baltimore, learned that one of the jurors who convicted him was the father of a secretary employed in the trial section of the Baltimore City State's Attorney's Office. 21 Md.App. at 441, 319 A.2d at 847. That juror had not responded when asked during voir dire, "[d]oes any member of the panel have any member of your immediate family who is or was a member of a law enforcement agency as I have defined?" 21 Md.App. at 441, 319 A.2d at 846. Contending that, had the required response been made, he would have used an unexpended peremptory challenge to strike the juror, 21 Md.App. at 439–440, 319 A.2d at 846, Burkett argued, relying on *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759, 771–772 (1965) and *Spencer v. State*, 20 Md.App. 201, 208, 314 A.2d 727, 731 (1974), that his right to peremptory challenge thus was denied or impaired, entitling him to a new trial without the need to show prejudice. 21 Md.App. at 440, 319 A.2d at 846.

At the new trial hearing, the juror testified that he had not heard the words "State's Attorney's Office" in the question, that he did not realize he was being asked a question which required him to disclose his daughter's employment, that his daughter's position with the State's Attorney's Office did not influence his decision, and that he had not discussed the case

---

biases or predispositions that prospective jurors may hold which, if present, would hinder their ability to objectively resolve the matter before them." *Davis v. State*, 333 Md. 27, 36, 633 A.2d 867, 871–72 (1993).

with his daughter. 21 Md.App. at 441–442, 319 A.2d at 847. On the basis of that testimony, the trial court found the non-disclosure to be inadvertent, and that it had no effect on the verdict. It denied Burkett's motion for new trial, concluding that the non-disclosure was not "sufficient to warrant this Court setting aside the jury's verdict and to grant a new trial." 21 Md.App. at 442, 319 A.2d at 847.

The Court of Special Appeals affirmed. It rejected the peremptory challenge impairment argument, noting that "there is no showing of intentional denial or impairment of the right, either express or implied. On the contrary, the record makes crystal clear (a) that the juror's failure to respond was wholly inadvertent and (b) that the nature of the withheld information did not in and of itself rise above the purest speculation that it would indicate the juror's bias or prejudice against persons accused of crime." 21 Md.App. at 445, 319 A.2d at 849. As indicated, the intermediate appellate court held that, in the absence of a showing of actual prejudice, or unless the evidence withheld "gives rise to a reasonable belief that prejudice or bias by the juror against the accused is likely," the grant of a new trial is discretionary with the trial court. *Id.* at 445, 319 A.2d at 849. No actual prejudice having been shown or alleged, the court concluded that the withheld information did not suffice to require a new trial:

> "We are persuaded that the contention that a parent of one working as a secretary in a law enforcement agency would be prejudiced against all persons accused of crime is so fanciful and unlikely that it does not rise above the purest speculation. .... The information withheld here does not require a new trial as a matter of law. The grant of the relief prayed in a motion for a new trial under such circumstances must be left to the sound discretion of the trial judge."

21 Md.App. at 445–46, 319 A.2d at 849.

A similar situation was presented in *Leach v. State,* 47 Md.App. 611, 425 A.2d 234 (1981). In *Leach,* a juror did not disclose, during voir dire, her acquaintanceship, as classmate and neighbor, with a State witness, one of the investigating

homicide detectives. 47 Md.App. at 618, 425 A.2d at 238. When that information was revealed on cross-examination of the detective, the court voir dired the juror. In addition to confirming that the juror and the detective were "old school-mate[s] and neighbor[s] of ... some fifteen years prior," the court was assured by the juror that her past relationship with the detective would not cause her to give the detective's testimony any greater weight and "that her ability to fairly and impartially judge the case would not be impeded." The court accepted that assurance and did not strike the juror, which the defendant contended on appeal was reversible error. 47 Md.App. at 618, 425 A.2d at 238. The Court of Special Appeals did not agree. 47 Md.App. at 618, 425 A.2d at 238. Citing the test outlined in *Burkett,* it explained:

> "We think the same guidelines apply where a mistrial is sought because of misinformation given by a prospective juror during voir dire proceedings. The voir dire conducted by the trial judge after the discovery of her acquaintance with the police officer satisfied the judge that the failure of the juror to disclose her acquaintance during the original voir dire was inadvertent and unintentional; that the relationship between the juror and the officer was minimal and had existed in the remote past; and that the juror could still render a fair and impartial verdict. Under the circumstances, we do not believe that the facts in this case would require a disqualification for cause of the juror during the original voir dire; nor do we find any abuse of discretion by the trial judge in refusing to strike the juror after the case had begun or to grant a mistrial."

47 Md.App. at 619, 425 A.2d at 238–239.

The State argues that *Burkett* and *Leach* are applicable and dispositive. It maintains that, under those precedents, the juror's failure to disclose her relationship to a family member who worked in the State's Attorney's Office did not prejudice the defendant and, as such, there is no sufficient basis for the grant of a new trial.

We do not agree. In both *Burkett* and *Leach,* the trial judge, upon discovery of the jurors' non-disclosure of a rela-

tionship that was the subject of voir dire inquiry, recognizing the potential for prejudice, questioned the jurors, on the record, to determine whether there was, or cause to be concerned about, prejudice. Only after that inquiry and on the basis of the findings it made on the basis of the information it disclosed did, or could, the trial court exercise its discretion with respect to the requested relief. With no comparable inquiry as a predicate in this case, the trial judge, concluding that the relationship not disclosed was "pretty remote," and, therefore, not sufficient to support a new trial, denied the Williams' motion for new trial.

As we have said, voir dire is the mechanism by which we give substance to the constitutional guarantee to criminal defendants of a fair and impartial jury trial. The questions propounded during the voir dire process are focused upon, and designed to uncover, bias, prejudice or pre-conception. In fact, the subjects to which those questions are directed comprise, or relate to, "potential biases or predispositions that prospective jurors may hold which, if present, would hinder their ability to objectively resolve the matter before them." *Dingle v. State*, 361 Md. 1, 11 n. 8, 759 A.2d 819, 824 n. 8. Therefore, if the guarantee of impartiality is to be meaningful, prospective jurors must be expected to answer the questions applicable to them, and to do so fully and truthfully. A defendant must be able to rely on that being the case. Had the juror responded to the subject voir dire question, the defendant would have been able to move to strike the juror for cause, if he felt that she was prejudiced, and to strike peremptorily otherwise. To be sure, the disclosure of the relationship would not have resulted in a finding of prejudice as a matter of law and, thus, a strike for cause; however, it would have allowed for further investigation and information bearing on that issue, specifically an inquiry into the venire person's ability to render an impartial verdict based solely on the evidence presented. *Thomas*, 369 Md. at 210, 798 A.2d at 571; *Davis*, 333 Md. at 37, 633 A.2d at 872. The failure to disclose foreclosed that further investigation and delving of the juror's state of mind.

 Moreover, as we made clear in *Dingle*, "[b]ias is a question of fact," 361 Md. at 15, 759 A.2d at 826, the existence of which is a matter left to the trial judge, "the focal point in the process," whose "predominant function in determining juror bias involves credibility findings whose basis cannot be discerned from an appellate record." *Id.*, *quoting Wainwright v. Witt*, 469 U.S. 412, 429, 105 S.Ct. 844, 855, 83 L.Ed.2d 841, 855 (1985). In addition, it is the trial judge's role to decide whether, and when, cause for disqualification exists for any particular venire person. *Id.* In both *Burkett* and *Leach*, the trial court was able to perform its "focal point" role. It was able to conduct the further investigation and delving into the juror's state of mind, albeit after the fact. As a result, the court was able to satisfy itself, and was satisfied, that the non-disclosure was inadvertent, that, in other words, there was no basis to believe that the juror was biased or otherwise not impartial.[7]

 We endeavor to be clear on this point. Where the juror is available for further voir dire and is further voir dired, a trial court may exercise the discretion *Burkett* requires it to exercise. But, the trial court's sound discretion can only be exercised *on the basis of the information that the voir dire reveals and the findings the trial court makes as a result.* On the other hand, where the juror is not available or is not voir dired, there simply is neither a basis for the findings of fact, which must form the predicate for the exercise of discretion, nor for the exercise of discretion that *Burkett* contemplates.[8] That the trial court may believe that it is "pretty remote" that an answer to a voir dire question would uncover bias or

---

7. *Doss v. State*, 906 So.2d 836 (Miss.Ct.App.2004) and *State v. Evans*, 20 P.3d 888 (Utah 2001) are to like effect. In both, the non-disclosing juror was voir dired by the trial court during the hearing on the defendant's motion for new trial, *Doss*, 906 So.2d at 839; *Evans*, 20 P.3d at 894, after which the trial court was satisfied that the non-disclosure was inadvertent, *Doss*, 906 So.2d at 840; *Evans*, 20 P.3d at 894, and, in *Evans*, that, had there been timely disclosure, it would not have resulted in disqualification to serve. 20 P.3d at 894.

8. *Phares v. Brooks*, 214 W.Va. 442, 590 S.E.2d 370, 373 (2003) is illustrative of this point, although a personal injury case rather than a

prejudice does not, and cannot, replace the need for the court to make findings of fact on the issue.

■ We hold that, where there is a non-disclosure by a juror of information that a voir dire question seeks and the record does not reveal whether the non-disclosure was intentional or inadvertent,[9] the defendant is entitled to a new trial.[10] That the disclosure would not automatically have required a strike for cause does not matter; it is the inability of the

---

criminal case. There, a juror failed to disclose that she was employed by an insurance company. The appellant sought a new trial on that basis. The Circuit Court denied the motion for new trial, apparently accepting the appellee's argument that the nondisclosure was a result of the juror's failure to hear the question, or that an affirmative response, by her raising her hand, was overlooked by the court reporter. The Supreme Court of Appeals of West Virginia reversed, noting that the juror in question had not testified that she had not heard the voir dire question or given any explanation for her failure to answer. It commented, "[w]e are ... troubled by the circuit court's order when its conclusion is based on speculation...." 590 S.E.2d at 373.

9. The State argues, relying on *Argyrou v. State*, 349 Md. 587, 609, 709 A.2d 1194, 1204–1205 (1998), and *Isley v. State*, 129 Md.App. 611, 674, 743 A.2d 772, 805–806 (2000), that the burden of establishing prejudice for purposes of a motion for a new trial lies solely with the proponent for the new trial, a burden which Williams has not carried. It also submits that prejudice should not be presumed in this case, there being nothing on the record to suggest that Williams was prejudiced and, in fact, the record supports the conclusion that the juror in question did not purposely avoid questioning, merely "did not hear the particular language that applied to her." We are not persuaded.

We have held that a new trial is required. As should be obvious, that result is the product of a record that was so deficient as not to have permitted this Court, or the trial court, for that matter, to make a finding as to why the juror not did disclose her familial relationship. Speculation from an inadequate record simply will not do. To require more than that is neither "creat[ing] laboratory circumstances" or "creat[ing] precision," rather it is insisting that we, as judges, discharge our responsibilities consistent with the rules and the decisional law. The expense of retrials would be greatly limited were we to spend more time adhering to this principle. We do pre-suppose that the jurors who serve in Baltimore City do so with the same dedication and skill as jurors in other parts of the State and that they do, and can, understand simple sentences. In this regard, as well, we would do better to be positive, not negative.

10. The dissent believes that a new trial should not be granted, that this case should only be remanded for a hearing to determine whether the

defendant to have the benefit of a further investigation by the court, he or she being deprived of the ability to delve into the juror's state of mind for bias and of a finding in that regard, that is decisive. The perceived "remoteness" of the potential bias does not preclude bias; without a finding of fact in confirmation, it cannot be a sufficient reason to deny a new trial.

This approach and result is consistent with decisions from other jurisdictions. In *State v. Thompson*, 142 N.J.Super. 274, 361 A.2d 104, 108 (App.Div.1976), the court held:

appellant was prejudiced by the juror's non-disclosure. 394 Md. 98, 118–19, 904 A.2d 534, 546–47 (2006) (Raker, J., dissenting). It reasons that, because the scope of voir dire in Maryland is limited to exposing a cause for disqualification and does not encompass questions designed to elicit information in aid of peremptory challenges, the out of jurisdiction cases we cite do not support this holding, noting that, in these other states, the voir dire process *does* provide a basis for exercising peremptory challenges. 394 Md. at 121–24, 904 A.2d at 548–50 (Raker, J., dissenting). The dissent also notes that the Maryland standard does not force the trial court to decide whether, or not, the withheld information resulted in a lost peremptory strike. 394 Md. at 121–22, 904 A.2d at 548 (Raker, J., dissenting).

Whether the withheld information is used for juror disqualification or in aid of the use of peremptory strikes is besides the point. Whenever a relationship is not disclosed, the ability of a party to probe for bias is lost. Because bias is not apparent or discoverable during any stage, the defendant is prejudiced from the start. The primary case on which the dissent relies is *McDonough Power Equipment., Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). 394 Md. at 118–19, 904 A.2d at 546 (Raker, J., dissenting). This case, to be sure, also deals with the loss by a party of the opportunity to exercise a peremptory strike, the very situation rejected by the dissent. 394 Md. at 118–19, 904 A.2d at 546 (Raker, J., dissenting). The juror in *McDonough* failed to respond when asked if he had ever sustained injuries similar to the plaintiff's. 464 U.S. at 550, 104 S.Ct. at 847, 78 L.Ed.2d at 667. The information that question sought to elicit was clearly not so prejudicial as a direct family relationship to a member of the State would be. Finally, *McDonough* holds specifically, *"Voir dire* examination serves to protect [the] right [to a fair trial by an impartial trier of fact] by exposing possible biases, both known and unknown, on the part of potential jurors," 464 U.S. at 554, 104 S.Ct. at 849, 78 L.Ed.2d at 671, and, in discussing when a new trial *should* be granted, clearly states that "reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." 464 U.S. at 556, 104 S.Ct. at 850, 78 L.Ed.2d at 671. A direct family relationship to an employee of the State's Attor-

"Regardless of the labels which may be applied in articulating the reasons for reversal of a criminal conviction resulting from a trial where a juror has failed to respond to a Voir dire question patently addressed to the possible existence of bias, the result must be the same. Whether the nondisclosure is designated as 'prejudicial Per se,' presumptively harmful or 'colorable bias,' the conclusion is inescapable that defendant has been deprived of a fundamental right to a fair trial and that his conviction cannot stand."

Similarly, it was held in *People v. Blackwell*, 191 Cal.App.3d 925, 929, 236 Cal.Rptr. 803 (Cal.Ct.App.1987) (citations omitted):

"The prosecution, the defense and the trial court rely on the voir dire responses in making their respective decisions, and if potential jurors do not respond candidly the jury selection process is rendered meaningless. Falsehood, or deliberate concealment or nondisclosure of facts and attitudes deprives both sides of the right to select an unbiased jury and erodes the basic integrity of the jury trial process.

"Intentional concealment of relevant facts or the giving of false answers by a juror during the voir dire examination constitutes misconduct ... and the occurrence of such misconduct raises a rebuttable presumption of prejudice.... Prejudicial jury misconduct constitutes grounds for a new trial.".

*See also State v. Woods*, 345 S.C. 583, 550 S.E.2d 282, 284 (2001) ("Where a juror, without justification, fails to disclose a relationship, it may be inferred, nothing to the contrary appearing, that the juror is not impartial"); *Doyle v. Kennedy Heating & Service, Inc.*, 33 S.W.3d 199, 201 (Mo.Ct.App.2000) ("If a juror intentionally withholds material information requested on *voir dire*, bias and prejudice are inferred from such a concealment. .... Only where a juror's intentional nondisclosure does not involve a material issue, or where the

ney's Office certainly qualifies as a reason that may affect a juror's impartiality and, thus, the fairness of the trial.

nondisclosure is *unintentional*, should the trial court inquire into prejudice." (Emphasis in original)); *State v. Akins*, 867 S.W.2d 350, 357–358 (Tenn.Crim.App.,1993) (defendant entitled to new trial because juror failed to disclose, on voir dire, relevant life experiences specifically inquired about); *Board of Trustees Eloy Elementary School Dist. v. McEwen*, 6 Ariz. App. 148, 430 P.2d 727, 733 (1967) ("The right to a trial by jury means an impartial jury and nondisclosure, [u]pon proper inquiry on voir dire examination, of bias or prejudice which would render a juror vulnerable to challenge, is ground for a new trial"); *Hayes v. Boykin*, 271 Ala. 588, 126 So.2d 91, 94 (1960) (ruling that a juror's silence during voir dire could be a basis for granting a new trial); *Freeman v. Hall*, 286 Ala. 161, 238 So.2d 330, 335 (1970) ("The proper inquiry on a motion for a new trial based on improper or nonexistent responses to *voir dire* questions is whether the response, or the lack of response, resulted in probable prejudice to the movant"); *Jackson v. United States*, 395 F.2d 615, 618 (D.C.Cir.1968) (ordering new trial when juror did not disclose that he had been "the lover in a love triangle strikingly similar to the one alleged to have been involved" and was being tried in the case on which he sat).

## C.

Finally, we turn to the second issue raised by Williams, that the State's failure to disclose potential impeachment evidence regarding one of its witnesses, namely that the investigating police officer in this case had a history of official misconduct and allegations of neglect of duty, violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Maryland Rule 4–263(g).[11] This issue was recently addressed

11. Maryland Rule 4–263(g) provides:

"(g) Obligations of State's Attorney. The obligations of the State's Attorney under this Rule extend to material and information in the possession or control of the State's Attorney and staff members and any others who have participated in the investigation or evaluation of the action and who either regularly report, or with reference to the particular action have reported, to the office of the State's Attorney."

in *State v. Williams,* 392 Md. 194, 896 A.2d 973 (2006). In *Williams,* we held that Maryland Rule 4–263(g) extended not only to exculpatory or mitigating information pertaining to State's witnesses known by the Assistant State's Attorney actually prosecuting a specific criminal case and the related officers participating in that prosecution, but also to such information known to the other Assistant State's Attorneys in the same office, 392 Md. at 209–210, 896 A.2d at 982, and that, furthermore, *Brady v. Maryland* has the same reach. 392 Md. at 209–210, 896 A.2d at 982.

Williams contends that knowledge of this officer's past could be imputed to the prosecutor in the case *sub judice,* and that, furthermore, as an investigating officer, the officer fits square-ly within the definition of "others who have participated in the investigation or evaluation of the action and who regularly report, or with reference to the particular action have report-ed, to the office of the State's Attorney." On the other hand, the State contends that *Brady* does not require a combing of the internal affairs files of every police officer involved in a particular case.

We have reversed Williams's conviction because of the juror nondisclosure. Consequently we need not, and therefore, do not, resolve the issue, leaving it for resolution on retrial. Our recent *Williams* decision is dispositive of these issues and, thus, should guide the trial court in that regard.

JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY REVERSED AND CASE REMANDED TO THAT COURT FOR A NEW TRIAL. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.

RAKER, J., files dissenting opinion in which HARRELL and BATTAGLIA, JJ., join.

RAKER, Judge, dissenting, in which HARRELL and BATTAGLIA, JJ., join:

I respectfully dissent from the judgment of the Court granting appellant a new trial based on this record. The majority creates a rule that is overbroad and unsupported by

any authority. Before a new trial should be ordered and the State in a criminal case, or the prevailing party in a civil case, is denied the benefit of a conviction or a favorable verdict and is required to bear the expense and the time of a new trial based on juror non-disclosure during *voir dire*, the trial court should, at a minimum, hold an evidentiary hearing affording counsel the opportunity to inquire as to the facts surrounding the non-disclosure. The court should then make a finding as to whether the conduct was intentional or inadvertent, and whether any party was prejudiced. Accordingly, I would remand this matter for an evidentiary hearing to permit the trial court to determine whether the juror non-disclosure in this case was intentional, and if it was, whether there was any prejudice to appellant. *See, e.g., McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) (reversing United States Court of Appeals for the Tenth Circuit granting motion for new trial and remanding to permit party to demonstrate that juror failed to answer honestly a material question on *voir dire* and that a correct response would have provided valid basis for challenge for cause).

## I.

The majority holds "that, where there is a non-disclosure by a juror of information that a *voir dire* question seeks and the record does not reveal whether the non-disclosure was intentional or inadvertent, the defendant is entitled to a new trial." Maj. op. 394 Md. at 114, 904 A.2d at 543–44. The majority is too quick to grant a new trial.

I would adopt the test articulated by the United States Supreme Court in *McDonough,* a products liability action. In that case, the Supreme Court outlined a procedure to be followed when a juror has failed to honestly answer questions posed on *voir dire. See McDonough,* 464 U.S. at 556, 104 S.Ct. at 850. Many courts in the country have adopted the *McDonough* test, not only in civil cases but also in criminal cases. *See, e.g., Grover v. Minette–Mills, Inc.,* 638 A.2d 712, 715 (Me.1994); *State v. Tolman,* 121 Idaho 899, 828 P.2d 1304,

1307 (1992); *In re Nash,* 158 Vt. 458, 614 A.2d 367, 371 (1991); *Isaacs v. State,* 259 Ga. 717, 386 S.E.2d 316, 335 (1989); *State v. Rempel,* 53 Wash.App. 799, 770 P.2d 1058, 1060–61 (1989), *rev'd on other grounds,* 114 Wash.2d 77, 785 P.2d 1134 (1990); *Catchings v. City of Glendale,* 154 Ariz. 420, 743 P.2d 400, 402 (Ct.App.1987). *See generally* Robert G. Loewy, *When Jurors Lie: Differing Standards for New Trials,* 22 Am. J. Crim. L. 733, 757–58 (1995).

As the Supreme Court observed in *McDonough,* trials are expensive and a new trial should not be granted lightly. *See McDonough,* 464 U.S. at 553, 104 S.Ct. at 848. Petitioner in that case alleged that a juror did not disclose information about injuries previously sustained by his son when a tire exploded. *Id.* at 550–51, 104 S.Ct. at 847. The *McDonough* court held "that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause." *Id.* at 556, 104 S.Ct. at 850. Writing in a plurality opinion, Chief Justice Rehnquist stated as follows:

"This Court has long held that ' "[a litigant] is entitled to a fair trial but not a perfect one," for there are no perfect trials.' Trials are costly, not only for the parties, but also for the jurors performing their civic duty and for society which pays the judges and support personnel who manage the trials. It seems doubtful that our judicial system would have the resources to provide litigants with perfect trials, were they possible, and still keep abreast of its constantly increasing caseload. Even this straightforward products liability suit extended over a 3–week period.

"We have also come a long way from the time when all trial error was presumed prejudicial and reviewing courts were considered 'citadels of technicality.' The harmless-error rules adopted by this Court and Congress embody the principle that courts should exercise judgment in preference to the automatic reversal for 'error' and ignore errors that do not affect the essential fairness of the trial. For exam-

ple, the general rule governing motions for a new trial in the district courts is contained in Federal Rule of Civil Procedure 61, which provides:

> 'No error ... or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict ... unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.' "

*Id.* at 553, 104 S.Ct. at 848–49 (citations omitted).

The majority states that rulings in other jurisdictions mirror the holding that it announces today. *See* maj. op. 394 Md. at 115–16, 904 A.2d at 544–45. The cases relied upon by the majority do not support the majority's broad holding. Those cases are all distinguishable in two significant ways.

First, with the exception of one case, *State v. Thompson,* 142 N.J.Super. 274, 361 A.2d 104 (App.Div.1976), in all the cases relied upon by the majority, the trial court either held an evidentiary hearing or received affidavits from the juror in question, thereby enabling the trial court to make a finding as to whether the non-disclosure was intentional or inadvertent. Second, and of great significance, is that in every case relied upon by the majority, the prevailing rule in the jurisdiction is that *voir dire* serves not only to ferret out bias and challenges for cause, but also provides information to counsel for the intelligent exercise of *peremptory* challenges, which is not the rule in Maryland.

The scope of *voir dire* in Maryland is very limited. We have said time and time again that the sole purpose of *voir dire* in Maryland is "to expose 'the existence of cause for disqualification ... it does not encompass asking questions designed to elicit information in aid of deciding on peremptory challenges.' " *Landon v. Zorn,* 389 Md. 206, 216, 884 A.2d 142, 147 (2005) (quoting *Couser v. State,* 282 Md. 125, 138–39, 383 A.2d 389, 397 (1978)). This distinction affects the analysis

because the Maryland approach lessens the potential prejudice that may result from juror non-disclosure in response to a *voir dire* question. Furthermore, this feature of Maryland law makes it easier for the trial court to determine post-trial whether a party has been prejudiced by a juror non-disclosure because the trial court, in making this determination, is not forced to make findings with respect to whether a non-disclosure would have resulted in the exercise of a peremptory strike and, if so, whether the loss of the opportunity to exercise the peremptory strike would have had a prejudicial impact on the party.

Careful examination of the cases from other jurisdictions relied upon by the majority confirms these conclusions. For instance, in California, *voir dire* provides the basis for a challenge for cause or the exercise of peremptory challenges. Therefore, the standard and the analysis is not relevant in Maryland. The majority quotes *People v. Blackwell*, 191 Cal.App.3d 925, 236 Cal.Rptr. 803 (1987) for the proposition that intentional concealment of relevant facts constitutes misconduct, raising a rebuttable presumption of prejudice, and thereby constitutes grounds for a new trial. *See* maj. op. 394 Md. at 116, 904 A.2d at 545. The majority's selective quotes do not tell the entire story. The California court set out the following test:

"When a prospective juror in a criminal case fails to respond to a relevant, direct and unambiguous question during voir dire, the trial court, when hearing a motion for new trial, should determine whether the question propounded to the juror was (1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited. If the trial court's determination of these inquiries is in the affirmative, the court should then determine if prejudice to the defendant in selecting the jury reasonably could be inferred from the juror's failure to respond. If prejudice reasonably could be inferred, then a new trial should be ordered."

*Blackwell,* 236 Cal.Rptr. at 806 (citations and internal quotations omitted). In *Blackwell,* the court had before it an affidavit from the juror, revealing the juror's bias. *Id.* at 805. The content of the affidavit met the criteria for an inference of prejudice, and that the defense would have asserted a peremptory challenge to eliminate this juror from the panel even if the misconduct would not permit a challenge for cause. *Id.* at 806. *Blackwell* does not support the majority's holding that mere non-disclosure, without more, mandates a new trial.

In South Carolina, the law with respect to *voir dire* is that "[w]hen a juror conceals information inquired into during *voir dire,* a new trial is required only when the court finds the juror intentionally concealed the information, and that the information concealed would have supported a challenge for cause or would have been a material factor in the use of the party's peremptory challenges." *State v. Woods,* 345 S.C. 583, 550 S.E.2d 282, 284 (2001). Following an evidentiary hearing, the court found intentional concealment and prejudice because the information concealed would have been a material factor in the use of the party's peremptory challenges. *Id.* at 285. *Woods* cannot support the majority's holding.

In Missouri, the purpose of *voir dire* is to enable a defendant to exercise the right to challenge a juror for cause or to exercise peremptory challenges. *State v. Martin,* 755 S.W.2d 337, 339 (Mo.Ct.App.1988). The same is true for Tennessee, Arizona, New Jersey and Alabama, states relied upon by the majority. In all these jurisdictions, *voir dire* is permissible for the intelligent exercise of peremptory challenges as well as for cause.

In *Doyle v. Kennedy Heating & Service, Inc.,* 33 S.W.3d 199, 200 (Mo.Ct.App.2000), before the court granted a new trial based on juror non-disclosure, the court held an evidentiary hearing and found the juror conduct to be intentional. In *State v. Akins,* 867 S.W.2d 350, 354–58 (Tenn.Crim.App. 1993), the court held a hearing, the juror testified, and the non-disclosure was determined to be intentional. In *Board of Trustees Eloy Elementary School District v. McEwen,* 6

Ariz.App. 148, 430 P.2d 727, 728–29 (1967), the court had the juror's deposition and made a determination that the non-disclosure was intentional. In *Hayes v. Boykin*, 271 Ala. 588, 126 So.2d 91 (1960), where the trial court found, after a hearing, that the juror knew he was obligated to answer a *voir dire* question and did not do so, the Alabama Supreme Court, in upholding the trial court's grant of a new trial, concluded that had the juror responded to the question, his response would have revealed the information to counsel and counsel "could have exercised advisedly his peremptory challenges, and thus availed himself of one of the manifest purposes of [the Alabama Code]." *Id.* at 91–94. In *Jackson v. United States*, 395 F.2d 615, 616–17 (D.C.Cir.1968), a case character-ized by the court as one with bizarre facts, again, the trial court first held a hearing to flesh out the facts surrounding the juror's non-disclosure of significant information before deciding whether to grant a new trial.

In *State v. Thompson*, 142 N.J.Super. 274, 361 A.2d 104, 108 (App.Div.1976), the appellate division ordered a new trial on the grounds that a juror did not disclose his employment as a state prison guard. Although the trial court did not hold an evidentiary hearing and there was no finding of intentional non-disclosure, the court awarded a new trial because the court reasoned that "[t]he key determinant is whether defen-dant has been deprived of a fair trial by jury by virtue of his inability to exercise a peremptory challenge because of the failure of the juror to make a candid response to the inquiry relating to a significant fact of potential bias." *Id.* at 107. Thus, the *Thompson* court's holding was premised on the ability of the defendant to use *voir dire* as a basis for the exercise of peremptory challenges, which is clearly not the law in Maryland. Consequently, *Thompson* lends no support to the majority's holding.

## II.

This case fits well within the Maryland rule permitting and providing for a limited remand. Maryland Rule 8–604(d) provides in pertinent part as follows:

"(d) Remand. (1) Generally. If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand the case to a lower court. In the order remanding a case, the appellate court shall state the purpose for the remand. The order of remand and the opinion upon which the order is based are conclusive as to the points decided. Upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court."

We noted in *Southern v. State,* 371 Md. 93, 807 A.2d 13 (2002), that a limited remand is proper "in various circumstances, particularly when the purposes of justice will be advanced by permitting further proceedings." *Id.* at 104–05, 807 A.2d at 19–20 (collecting cases). In *Lipinski v. State,* 333 Md. 582, 636 A.2d 994 (1994), we explained that although limited remand is not an appropriate disposition in a criminal case when the error at issue occurred during the trial itself, it is appropriate if the error occurred during a proceeding collateral to the trial itself, and the remand is for the limited purpose of correcting the error that occurred during the collateral proceeding. *Id.* at 591–92, 636 A.2d at 998–99. The error in this case occurred during a collateral proceeding which took place after trial, when the trial judge failed to make the appropriate factual inquiry in response to appellant's motion for a new trial. Furthermore, for reasons discussed *supra,* limited remand would further the interests of justice in this case. Limited remand is the appropriate disposition of the *voir dire* issue.

In addition, proceeding in this fashion is consistent with the United States Supreme Court approach to Sixth Amendment violations and the approaches of other courts in the country. Most other courts in the country have remanded cases for evidentiary hearings when presented with similar issues. *See, e.g., Smith v. Phillips,* 455 U.S. 209, 215, 102 S.Ct. 940, 945, 71 L.Ed.2d 78 (1982) (noting that "[t]his Court has long held that

the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias"). When the record is deficient to show whether the juror non-disclosure was intentional or inadvertent, most courts have proceeded in this fashion. *See, e.g., State v. Thomas,* 777 P.2d 445 (Utah 1989).

Accordingly, I would adopt the *McDonough* test and remand this case for an evidentiary hearing to see if both prongs of the test have been met.

## III.

Appellant also argued before this Court that the trial court erred in not granting a new trial by failing to disclose that a police detective who testified for the State had been subject to an Internal Affairs disciplinary proceeding related to his handling of narcotics seized from suspects but unrelated to the case at hand. Before this Court he relies on *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Maryland Rule 4–263(a). I would affirm the judgment of the trial court and would hold that appellant failed to preserve for appellate review his claim for a new trial based upon *Brady* because he failed to raise it in his motion for a new trial. As to the State's obligation under the Maryland Rules, I would find that the trial court was correct in concluding that the State had no obligation under Rule 4–263(a) to disclose the detective's Internal Affairs records.

## A.

Appellant was charged with various violations of the Controlled Dangerous Substances Act, including distribution of cocaine and possession of heroin with intent to distribute. Appellant proceeded to trial along with a co-defendant, Jones. A jury convicted appellant on all counts with the exceptions of distribution of cocaine and the attempted distribution counts and he was sentenced to term of incarceration on the several convictions.

At trial, the State called as witnesses five police officers and three forensics experts. Two of the officers, Detectives White and Valencia, testified that while working undercover they attempted to purchase narcotics from appellant and Jones. They further testified that, after giving a marked twenty dollar bill to Jones, they were first shown two gelatin caps containing a white powdery substance which they believed to be heroin; they then told Jones that they wanted "coke," whereupon Jones, after conferring with appellant, eventually returned with two vials containing a rock-like substance and gave the vials to Detective Valencia.

The other officers, Detective Turner and Officers Smith and Fields, were part of the arrest team awaiting nearby to arrest suspects upon the direction of White and Valencia. Detective Turner testified that he arrested appellant after receiving his description from Valencia. He further testified that he searched him incident to this arrest and discovered one vial of cocaine and seven gelatin caps containing heroin on his person, and later gave these items to Officer Smith to submit to the police department Evidence Control Unit (ECU). Officer Smith testified that she received these items from Turner, but did not see him seize them from appellant when he arrested and searched him. Officer Fields testified that he was involved in the arrest of Jones at the direction of Valencia, and that he observed Jones being searched by another officer and the discovery of a glass smoking pipe incident to this search. The State's three other witnesses were all stipulated to be experts in forensic chemistry and testified that the items of evidence recovered from the searches of appellant and Jones and the gelatin caps given to Valencia by Jones all tested positive for the presence of cocaine or heroin.

Appellant and Jones moved for a new trial. The trial court held hearings on both motions, hearing Jones's motion before appellant's motion. In addition to moving for a new trial on grounds of non-disclosure of the juror's relationship with an employee of the State's Attorney's Office, Jones moved for a new trial on the ground that the State failed to disclose that Turner had been subject to disciplinary actions by the Balti-

more City Police Department on two separate occasions and had a third disciplinary matter pending at the time. Before the trial court ruled on Jones's motion, he withdrew the motion in accordance with an agreement reached with the State that in exchange it would recommend the minimum sentence provided for by the sentencing guidelines and permit Jones to raise on appeal the issues raised in the motion. Jones's counsel stated on the record the basis for his motion, asserting as follows:

"The second issue for appeal would be that one of the State's witnesses was Darryl Turner. Again, we were not aware that Darryl Turner in fact had some disciplinary action taken against him by the Baltimore City Police Department. I have a copy of a letter dated March 25, 2002 from the Baltimore City Police Department. That Detective Turner has a 1997 sustained conviction for misconduct. It was alleged that he had threatened a suspect by stating if he were to come to court he would deal with him in his own way. A 1995 sustained charge of misconduct and neglect of duty where the complaint was that the officer would seize drugs and not submit them to evidence, to evidence control. And there's an open charge from 2002 claiming that he failed to submit $470.00 to ECU. At least two of those disciplinary actions I think would have been impeachable. . . . And again, we were not aware of this until after the trial was over with."

The trial court, although not obligated to rule on the motion because it had been withdrawn, nonetheless commented on this ground as follows:

"Well, there's no duty for the State to disclose [Turner's disciplinary records] because they're not exculpatory to the incident itself and the only way that the defense gets access to them is by subpoenaing IID records. There's nothing in 4–263 that would require the State to disclose them."

Approximately two months later, the trial court held a hearing on appellant's motion for a new trial. In his motion, appellant argued he should be granted a new trial because,

among other reasons, "disclosure by the State after the trial indicates that Officer Darryl Turner had pending theft charges that could have been used for impeachment." At the hearing on his motion for a new trial, appellant argued for a new trial on the two grounds Jones relied upon, and also on the ground that he was tried improperly *in absentia*.[1] Appellant's counsel advised the trial court that he "had the benefit of hearing the Motion on the co-defendant [Jones] which was heard and denied...."[2] He then indicated his intention to rely on the arguments of Jones's counsel on the issue of the State's failure to disclose Turner's disciplinary record in advance of trial, stating that this issue had "been heard and ... I will adopt the arguments raised by previous counsel."

After hearing additional argument from appellant's counsel and ruling on the *voir dire* issue, the trial court denied appellant's motion for a new trial and explained its rejection of his argument based on the State's non-disclosure of Turner's disciplinary record as follows:

"That wasn't information that had to be disclosed by the State under Rule 4–263. The fact that he might have had an Internal Affairs problem on another occasion wasn't exculpatory to this Defendant's guilt. The proper way to obtain that information, as has been done hundreds of other times, is for the defense to find out about it, issue a subpoena for those records and impeach him with those records."

### B.

Appellant's *Brady* argument that the trial court erred in denying his motion for a new trial is not properly before this Court. The record reveals that appellant never raised *Brady*

---

1. This ground is not at issue in this appeal.

2. As discussed *supra*, appellant's counsel was incorrect in stating that the trial court denied Jones's motion. As noted, Jones's motion was withdrawn prior to a ruling by the trial court. Nonetheless, appellant's counsel's confusion on this point is perhaps understandable given that the trial court opined on how it would have ruled on Jones's motion.

in his motion before the trial court. Under Rule 8–131(a), this Court "[o]rdinarily ... will not decide [an] issue unless it plainly appears by the record to have been raised in or decided by the trial court." Although Rule 8–131(a) does give the Court limited discretion to address an issue not raised below, I find it inappropriate to exercise that discretion in this case. *See Abeokuto v. State*, 391 Md. 289, 328, 893 A.2d 1018, 1042 (2006) (stating that ineffective assistance of counsel claim more properly raised in post-conviction proceeding because, ordinarily, the trial record does not illuminate the basis for the challenged acts or omissions of counsel). *Cf. Keeter v. State*, 175 S.W.3d 756 (Tex.Crim.App.2005) (holding that because defendant never mentioned *Brady* in motion for new trial, appellate court would not consider the issue).

In appellant's motion for a new trial, he made no reference to *Brady*, and at argument before the trial court, he relied *exclusively* on the arguments previously raised in Jones's motion for a new trial. Jones never argued that the State had a duty under *Brady* to disclose this information. As appellant relied exclusively on Jones's arguments, he also failed to raise *Brady* before the trial court. Moreover, the trial court did not understand either Jones or appellant to have raised a *Brady* issue. Although Jones withdrew his motion for a new trial before the court ruled on it, the court said that the motion was meritless because "[t]here's nothing in [Rule] 4–263 that would require the State to disclose them." The trial court did not mention *Brady*, let alone attempt to explain why the State would not have an obligation under *Brady* to disclose this information.

In addition, the unpreserved *Brady* issue is inappropriate for review because the matter requires additional factual development. Ordinarily, appellate courts should not exercise their discretion to consider issues not raised below when the issue raised for the first time on appeal requires additional factual development. *See, e.g., Jones v. State*, 379 Md. 704, 714, 843 A.2d 778, 784 (2004); *Orr v. Wal–Mart Stores, Inc.*, 297 F.3d 720, 725 (8th Cir.2002). Given the record in the present case, it would be inappropriate to pass upon appel-

lant's *Brady* issue. To establish a *Brady* violation, a defendant must show that the evidence at issue (1) is favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) was suppressed by the State, either willfully or inadvertently; and (3) is material. *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999); *Wilson v. State*, 363 Md. 333, 345–46, 768 A.2d 675, 681–82 (2001).

Since *Brady* was not raised in or decided by the trial court, the record before the Court does not permit a determination as to whether any of the necessary elements of a *Brady* claim are established in the present case. Although Jones's counsel claimed before the trial court that Turner's disciplinary record was detailed in a letter he received from the Baltimore City Police Department, the record does not contain that letter or anything else detailing the disciplinary proceedings concerning Turner. Given this gap in the record, this Court could not determine whether Turner's disciplinary record would be favorable to appellant, and, if so, whether it would be sufficiently favorable to meet the *Brady* materiality test.

Second, the record is unclear as to when appellant actually possessed the information concerning Turner's disciplinary record. There is a factual conflict in this record as to when appellant learned of this information. In Jones's motion for a new trial, he indicated that his counsel was "unaware of the ongoing investigation of Detective Turner" during trial, and was only advised of the investigation by the prosecution after trial. At the hearing on Jones's motion for a new trial, his counsel informed the court that the issue concerning Turner's disciplinary record had not been raised at trial "because information on . . . [that] issue[ ] came to us after the trial was over." This colloquy suggests that Jones's counsel was not in possession of information regarding Turner's disciplinary record until sometime after April 2, 2003, the date the trial concluded. Nonetheless, he also informed the court during the hearing that he subpoenaed Turner's records before the beginning of his trial and that "the subpoena was responded to by the Police Department on March the 25[th], *which was the*

*same day we started trial."* (Emphasis added). Jones's counsel then stated that "this material [*i.e.*, Turner's disciplinary record] came *at least a day or two subsequently to our trial beginning."* (Emphasis added). These statements suggest that Jones's counsel had the information regarding Turner's disciplinary record on or near March 25, 2003, prior to Turner's testimony at trial on April 1, 2003. The record, furthermore, fails to disclose when Jones's counsel shared this information with appellant's counsel. The record, therefore, is inadequate to determine reliably whether the suppression element of the *Brady* test is satisfied because it is unclear when appellant actually possessed the information concerning Turner's disciplinary record.

## C.

The remaining issue before this Court is the scope of the obligation of the prosecutor to disclose information to the defense without a request under the Maryland Rules. The issue, therefore, is not due process but discovery under the Maryland Rules. The trial court concluded that under Rule 4–263, the fact that the officer might have had an Internal Affairs "problem on another occasion wasn't exculpatory to this Defendant's guilt." The trial judge also said that the proper way to get that information was for the defendant to find out about the information and to issue a subpoena for the records.[3]

Rule 4–263(a) states, in pertinent part, as follows:

"(a) **Disclosure Without Request.** Without the necessity of a request, the State's Attorney shall furnish to the defendant:

---

**3.** I do not think that the trial court was suggesting that impeachment materials were outside the scope of *Brady* requirements. To the extent that the judge's remark might be interpreted as such, obviously that is incorrect. *See Youngblood v. West Virginia,* —— U.S. ——, ——, 126 S.Ct. 2188, 2190, 165 L.Ed.2d 269, 272–73 (2006) (citing *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985) (holding that *Brady* applies to impeachment evidence)).

(1) Any material or information tending to negate or mitigate the guilt or punishment of the defendant as to the offense charged."

The question in this case is whether Internal Affairs records of a police officer, gathered in a matter unrelated to the charge at hand, must be disclosed to the defense without a request by defense counsel.

Rule 4–263(g) states as follows:

"(g) **Obligations of State's Attorney.** The obligations of the State's Attorney under this Rule extend to material and information in the possession or control of the State's Attorney and staff members and any others who have participated in the investigation or evaluation of the action and who either regularly report, or with reference to the particular action have reported, to the office of the State's Attorney."

Appellant argues that *Williams v. State*, 152 Md.App. 200, 831 A.2d 501 (2003) "should dictate the outcome in the instant case." He is wrong. First, this Court granted certiorari in *Williams*, and in *State v. Williams*, 392 Md. 194, 896 A.2d 973 (2006), affirmed the Court of Special Appeals. In *State v. Williams*, this Court held that, for *Brady* purposes, the knowledge of evidence held by one prosecutor will be imputed to another prosecutor within the same office. *Id.* at 211, 896 A.2d at 983. We noted that the policy basis for our holding "will, potentially, avoid problems of intentional shielding of information and the existence of artificially created circumstances in which prosecutors can 'plausibly deny' having had access to any exculpatory evidence." *Id.* at 222, 896 A.2d at 989. This case does not deal with members of the State's Attorney's Office. Rather, this case concerns information within the confidential police department personnel files, gathered in a matter unrelated to the charge before the Circuit Court.

I would hold that information within the police Internal Affairs Department does not come within the scope of Rule 4–263(a). Although the information sought by appellant is po-

tential impeachment material, it is information contained within the confidential personnel files of the police officer, and is likely to be unknown to the prosecutor. Under Rule 4–263(a), the prosecution has a duty to disclose to the defense, without a request, "[a]ny material or information tending to negate or mitigate the guilt or punishment of the defendant as to the offense charged." Encompassed within this duty to disclose is not only exculpatory evidence, but also impeachment evidence. *See Williams*, 392 Md. at 206–10, 896 A.2d at 980–82. Although facts known to the police are to be imputed to the State for *Brady* purposes and are subject to mandatory disclosure obligations without a request, this duty under Rule 4–263 is limited to information related to the specific case.

*United States v. Avellino*, 136 F.3d 249 (2d Cir.1998) is instructive on this point. There, the court explained the rationale for not expanding the scope of the prosecutor's duty to search for exculpatory information to include knowledge of information not gathered in connection with the case as follows:

> "[K]nowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor, for the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.' "

*Id.* at 255 (quoting *United States v. Gambino*, 835 F.Supp. 74, 95 (E.D.N.Y.1993)); *see also United States v. Stein*, 424 F.Supp.2d 720, 723 (S.D.N.Y.2006) (citing *Avellino*, and holding that the prosecution did not have a duty to search information in possession of the Internal Revenue Service that was not gathered in connection with the case, even though IRS criminal investigators were assisting in the prosecution of the case).

The records of Detective Turner are personnel records and as such, under Md. Code (1984, 2004 Repl. Vol., 2005 Cum. Supp.), § 10–616(i) of the State Government Article, are confidential. *See Kirwan v. The Diamondback,* 352 Md. 74, 82–83, 721 A.2d 196, 200 (1998) (interpreting § 10–616(i), and concluding that it reflects "a legislative intent that 'personnel records' mean those documents that directly pertain to employment and an employee's ability to perform a job"); *Baltimore City Police Dep't v. State,* 158 Md.App. 274, 282–83, 857 A.2d 148, 153 (2004) (applying *Kirwan,* and holding that police internal affairs records are "personnel records" within the meaning of § 10–616). Even though these records are not subject to the mandatory disclosure by the State under 4–263(a), they may nonetheless be subject to discovery by a defendant in a criminal case under certain circumstances, but subject to discovery only pursuant to certain procedures.

In the context of pretrial discovery, in order to obtain access to police officer Internal Affairs records, a defendant should file a motion pursuant to Rule 4–264,[4] asking the court to issue a subpoena for the records. In the motion, the defendant should include a description of the records or information sought and good cause for the discovery or disclosure, including a statement as to the materiality of the information to the subject matter involved in the pending case. *Cf. Zaal v. State,* 326 Md. 54, 87, 602 A.2d 1247, 1263–64 (1992) (setting forth procedures for discovery by a criminal defendant of confidential public records, and specifically requiring a threshold showing of the need to inspect the records). If the trial court is satisfied that this threshold showing has been made, it then should ordinarily conduct an in camera examination of the potentially relevant records to determine whether they have

---

4. Md. Rule 4–264 provides as follows:

"On motion of a party, the circuit court may order the issuance of a subpoena commanding a person to produce for inspection and copying at a specified time and place before trial designated documents, recordings, photographs, or other tangible things, not privileged, which may constitute or contain evidence relevant to the action. Any response to the motion shall be filed within five days."

any relevance to the issues presented in the case before the court, and order disclosure of those records which are material. *See id.* (prescribing that, after threshold showing of need to inspect has been satisfied, "the court may elect to review the records alone, to conduct the review in the presence of counsel, or to permit review by counsel alone, as officers of the court, subject to such restrictions as the court requires to protect the records' confidentiality," and further specifying factors that courts should take into account in deciding between these alternatives). This procedure balances the need of a criminal defendant to access information material to the defense with the State's legitimate interest in the confidentiality of police personnel records. This procedure is consistent with a criminal defendant's due process right of access to exculpatory information contained in public records that are confidential under state law. *See Pennsylvania v. Ritchie,* 480 U.S. 39, 57–61, 107 S.Ct. 989, 1001–03, 94 L.Ed.2d 40 (1987).

Confidential Internal Affairs police personnel records contained within the police department are different from information contained within the files of the State's Attorney's Office. I conclude that the State did not have an obligation under Rule 4–263(a) to disclose to appellant the police officer's disciplinary records or information regarding the disciplinary action taken against the officer because this information and material was not subject to potential disclosure under Rule 4–263 by subsection (g). The disciplinary records themselves involved prior, unrelated cases and in no way arose as a result of the investigation or prosecution of appellant.

For the foregoing reasons, I would remand the case to the Circuit Court, without affirming or reversing, for the limited purpose of holding a hearing on the juror *voir dire* issue.

Judge HARRELL and Judge BATTAGLIA have authorized me to state that they join in the views expressed in this opinion.